person interested in an estate to be informed of its assets has always been recognized, and the obstruction of that right by mere dispute of a claim or interest has never been permitted, but there is nothing in this provision of the Code which takes away from the surrogate "the power to determine the right of a petitioner to the remedy sought and prayed for before entering an order upon such application." In this particular case the petitioner merely states that she is an adopted daughter, without a word to show how or when, or under what circumstances, or by what process or by what legal proceeding, if any, she became such. Presumably she is a stranger in blood,—one who would not come within the statute of distributions unless there were an adoption valid in the law to give her that status. Prior to the act of 1887 adoption gave no inheritable right. It cannot be that any person presenting a petition to a surrogate, and merely stating that he was adopted by a decedent, without stating those facts which would bring him within the description of "next of kin," would be entitled to interfere in an estate. The petitioner here may consider herself to be an adopted daughter, and yet she may sustain no such relationship. She may believe that she was adopted and is next of kin, and yet no such adoption ever have taken place. The issue upon that head should have been regarded and litigated as the parties desired. We have no desire to limit in any way the meaning or operation of the subdivision of the section under consideration, but in this particular case we think the surrogate should not have required, upon this petition, without further proof, the filing of an inventory. That filing was not required by him of his own motion, but in recognition of a right which we think was not sufficiently established by the petitioner to justify the surrogate's order.

The order appealed from should be reversed, with costs and disbursements, and the matter remitted to the surrogate for further consideration. All concur.

---

(9 App. Div. 481.)

### CRAWFORD v. MAIL AND EXPRESS PUB. CO.

(Supreme Court, Appellate Division, First Department. October 23, 1896.)

1. CONTRACTS—INTERPRETATION—SATISFACTORY SERVICE.
    A provision, in a contract to write newspaper articles, that the service shall be satisfactory to the employer, does not authorize the employer to terminate the contract, unless his dissatisfaction is genuine.

2. SAME—EVIDENCE OF MASTER'S DISSATISFACTION.
    It is a question for the jury whether plaintiff's services as a writer of newspaper articles were unsatisfactory to defendant corporation, so as to entitle it to terminate the contract of employment, where there is evidence that defendant accepted his services for a considerable time without complaint, and only after a change in its management notified plaintiff of the termination of the contract, in a letter which was apologetic, and stated that the death of its former manager necessitated changes in the work on the paper, though defendant's editor testified that at a meeting of defendant's trustees they determined, after considering the value of plaintiff's services, to dispense with them as unsatisfactory.

Appeal from trial term, New York county.

Action by Theron C. Crawford against the Mail and Express Publishing Company. From a judgment dismissing the complaint upon a direction of the court after.trial at trial term, and from an order denying his motion for a new trial upon the minutes, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Frederic R. Kellogg, for appellant.
William Irwin, for respondent.

BARRETT, J. This is an action for damages for breach of a contract of employment. Upon the 24th day of August, 1892, Mr. Crawford, a professional writer for the press, was employed by the defendant at a stipulated salary to contribute a weekly article to its newspaper, the Mail and Express. The employment was for two years, with the proviso that Mr. Crawford's services.should be "satisfactory to the publishers"; and, in case they were not, that he should be entitled to one week's notice of the termination of the employment. The contract was signed by Elliott F. Shepard, as president of the defendant; and Mr. Crawford's dealings thereafter were almost exclusively with that officer. The plaintiff performed his engagement regularly, without any expression of dissatisfaction from any one connected with the defendant, until Col. Shepard's death, which occurred on the 24th of March, 1893. A week later the defendant notified Mr. Crawford to cease his contributions, and subsequently it returned his manuscript, and distinctly terminated the contract. This action for damages followed. Upon the trial the learned judge who presided dismissed the plaintiff's complaint upon the ground that the defendant, under the terms of the contract, had a right to terminate the employment as it did. At the close of the plaintiff's case, a motion to dismiss was made upon the ground that the onus was upon the plaintiff to show that his services were satisfactory, "or else the publishers had a perfect right to terminate the contract at will." This motion was denied. The defendant then called as a witness Mr. Alexander, who was the editor of the newspaper and the treasurer of the corporation. Mr. Alexander testified that at a meeting of the trustees of the defendant corporation, had after Col. Shepard's death, the value of Mr. Crawford's services was discussed, and it was unanimously agreed that his services should be dispensed with, for the reason that they were unsatisfactory to the publishers. At the close of the case the learned trial judge dismissed the complaint upon a renewal, at that stage, of the motion which he had previously denied. The plaintiff's counsel excepted to the ruling, and asked leave to go to the jury upon the question of satisfaction as one of fact, claiming that the evidence of dissatisfaction was not so clear as to warrant a dismissal of the complaint. The trial judge denied the request to go to the jury, and the plaintiff excepted.

We think these rulings were erroneous. Whether the defendant was really dissatisfied with the plaintiff's services, or whether its expression of dissatisfaction lacked genuineness, was a question of

fact for the jury.   As was said in Exhaust Ventilator Co. v. Chi-
cago, M. & St. P. Ry. Co., 66 Wis. 218, 28 N. W. 347, "To be dis-
satisfied is a fact, and must be a verity, and not a pretext."   The
contract here could not be terminated at will or pleasure.   It could
not, in fact, be terminated while the employé's services were satis-
factory to the employer.   If they were really satisfactory, the em-
ployer could not effect a lawful dismissal by a false statement of
dissatisfaction.   It is true that ordinarily an employer ought to
know whether he is satisfied or dissatisfied with his employé, and
that no one else can know as well.   But it is equally true that his
assertion is not conclusive, and that the circumstances attending
the assertion may be such as to justify a jury in finding that it
was a sham, and that in his secret heart the employer was not dis-
satisfied, but simply desired, for other reasons, to get rid of his em-
ployé.   It was said in Tyler v. Ames, 6 Lans. 280, where the con-
tract was to employ an agent for a year if he could fill the place
satisfactorily, that "it was for the defendant to determine when
plaintiff failed to fill the place of agent satisfactorily," and that the
court knew of no one who was authorized to review the employer's
decision.   That case was, as the respondent suggests, referred to
with approval in Boiler Co. v. Garden, 101 N. Y. 390, 4 N. E. 750,
but the distinction which we make was also plainly indicated.   "One
who undertakes to fill a particular place as agent," said Judge Dan-
forth, "may not unreasonably be expected to be bound by the opin-
ion of his employer honestly entertained."   Clearly, these words
"honestly entertained" lie at the foundation of the proviso in ques-
tion.   Was the dissatisfaction, then, honestly entertained?   Was
it in truth, to quote the language used in Tyler v. Ames, "the mental
condition of the employer"?   Or was their mental condition the
reverse?   And did they put the dissatisfaction forward merely as
a pretext to enable themselves to reduce expenses?   The determina-
tion of the main question of satisfaction or dissatisfaction undoubt-
edly belonged to the employers.   But it must be a genuine, and not
a sham, determination.   It is impossible to avoid the conclusion
that here there was enough to go to the jury on the latter head.
For seven months the plaintiff proceeded under his contract without
a word of complaint.   His contributions, indeed, received flattering
treatment.   They were conspicuously published and specially noted.
Shortly before Col. Shepard's death, he selected the plaintiff to per-
form an unusual and important service for the newspaper.   In do-
ing so, he referred in writing to Mr. Crawford's "intelligence and
judgment."   Yet within a week after Col. Shepard's death the plain-
tiff was requested to discontinue his contributions.   This request
was in writing, and its tone was apologetic.   There was not a sug-
gestion of dissatisfaction.   On the contrary, the secretary's letter
which conveyed the request suggested other reasons for the defend-
ant's action.   "You probably know," the letter commenced, "that
the death of Col. Shepard has necessitated some changes in our
work upon this paper."   Upon cross-examination, Mr. Alexander
testified that the plaintiff's services were unsatisfactory because "they
were unsatisfactory to the public."   Yet he acknowledged that

there had been no expression of dissatisfaction on the part of the public since Col. Shepard's death.    Whatever such expressions there were, related to the period when Col. Shepard was alive, and in full control.    The character of these expressions may be inferred from the fact that Col. Shepard, in his relations with the plaintiff, never referred to them.    The defendant's estimate of their value may also be inferred from the fact that none of the letters or communications in question were produced, although the witness who spoke of them acknowledged that the defendant probably had them.

We also think that the learned trial judge erred in limiting Mr. Alexander's cross-examination upon the point in question.    That the defendant's expression of dissatisfaction was not real and genuine could only be proved by circumstances.    It was competent, therefore, to show that, at or about the time of the plaintiff's dismissal, the trustees began to restrict and reduce the expenses of the paper.    It was also competent to show that no objectionable article by the plaintiff could be pointed out.    Such circumstances were, of course, inconclusive in themselves, but the plaintiff was entitled to have them weighed by the jury in connection with all the other facts and circumstances.

There are other questions of a serious character presented by the appellant, which need not be examined, as, for the reasons already assigned, the plaintiff is clearly entitled to a new trial.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.    All concur.