(13 App. Div. 514.)

### JANNECK v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Fourth Department.   January 27, 1897.)

1. INSURANCE—CONDITIONS AS TO INTEMPERANCE—RIGHT TO TERMINATE.
   It is a question of fact for the jury, and not for the decision of the insurer, whether an insured "became so intemperate as to impair his health," where his policy provided that, if the insured became so intemperate as to impair his health, the company should have the right, on becoming satisfied of such fact, to terminate the contract.

2. SAME—RIGHT TO DRINK MODERATELY—QUESTION FOR JURY.
   It was not error to leave to the jury the question whether an insured, who had Bright's disease, had a right to drink intoxicants, where his policy gave him the right to drink moderately, but provided that the company might cancel the policy if he became so intemperate as to impair his health.

Appeal from trial term, Erie county.

Action by Bertha Janneck against the Metropolitan Life Insurance Company on a policy of insurance.   From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.   Affirmed.

On the 5th day of July, 1890, the defendant issued its policy of insurance No. 64,059A, in consideration of $9.10, then paid, and $9.10 to be paid every three months thereafter during the life of the insured, whereby it insured the life of Charles Janneck in the sum of $1,000, and agreed to pay said sum to the plaintiff, his wife, upon his death.   Plaintiff alleges that premiums were paid from

the date of the policy until October 5, 1893, and subsequently they were tendered and refused by the defendant; the defendant from that date claiming the policy was canceled. August 20, 1894, the insured died, and proofs of loss were furnished to the defendant. The answer of the defendant, among other things, alleges, viz.: "That in October, 1893, the defendant made inquiry as to the health and condition of said Charles Janneck, and upon the 28th day of October, 1893, the defendant became satisfied of the fact that the said Charles Janneck had become so intemperate as to impair his health, and induce delirium tremens; that on the 31st day of October, 1893, the defendant tendered to the plaintiff, at her residence in the city of Rochester, N. Y., the sum of $48.66, * * * being the amount of the legal reserve upon said policy. * * *" The answer also alleges: "And the defendant alleges, upon information and belief, that the death of the said Charles Janneck happened in consequence of his intemperance, and that he died of a disease brought about by intoxication." At the close of the evidence the defendant asked the court to direct a verdict in its favor, and one of the grounds for the motion was, viz.: "It has been proven here unquestionably that this man's health was impaired by reason of intemperance; * * * that this man did use intoxicating drinks to excess, and that his disease was aggravated by his intemperance, and his health impaired. * * *" In response thereto the court observed, viz.: "In this case there is a controversy as to whether the drinking impaired the insured's health, and that I hold is a question for the jury." The motion was denied, and an exception was taken.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

John Van Voorhis & Sons, for appellant.
George F. Yeoman, for respondent.

HARDIN, P. J. When the defendant issued its policy, an application for the same, in writing, was made, and a statement was made to the medical examiner in answer to questions propounded to him. Question 7, and the answers thereto, were as follows:

"(7) To what daily or other extent do you use * * * alcoholic stimulants? A. Yes; moderately. Q. Wine or malt liquors? A. Yes; moderately."

Defendant predicates its defense upon the language of a clause in the policy which reads as follows:

"Should the life insured be convicted of a felony, or become so intemperate as to impair his health or induce delirium tremens, said company shall have the unquestioned right, upon becoming satisfied of such fact, to terminate this contract immediately upon the tender to the party in interest of the legal reserve, as hereinbefore described."

At the trial it was admitted that on the 31st of October, 1893, the defendant tendered to the plaintiff the sum of $48.66, being the amount of the legal reserve, and delivered to her a written statement, signed by its vice president, in which it stated to the plaintiff that the policy was canceled, and the contract of insurance terminated. Plaintiff refused to receive the money, and subsequently tendered payments of the several premiums that accrued thereafter.. It is contended by the appellant that it was the "sole judge as to whether or not the insured had become so intemperate as to impair his health." The language of the policy does not confer upon the defendant an arbitrary right to declare itself satisfied, and thereupon to terminate the contract of insurance. To enable the defendant to terminate the contract of insurance under the stipulation, the fact must exist that the insured has "become

so intemperate as to impair his health, or induce delirium tremens."
There is no pretense in this case that the insured had become so
intemperate as to induce delirium tremens, and therefore the other
branch of the stipulation was the one under which the defendant
sought to maintain his position, and its assertion of its right to
cancel the contract, and there became a very important and closely
contested question of fact upon the trial as to whether the party
insured had "become so intemperate as to impair his health" at
the time the defendant undertook to cancel the agreement, in Oc-
tober, 1893.   We think that question of fact was one for the jury
to determine.   Boiler Co. v. Garden, 101 N. Y. 388, 4 N. E. 749;
Russell v. Allerton, 108 N. Y. 288, 15 N. E. 391; Crawford v. Pub-
lishing Co., 9 App. Div. 481, 41 N. Y. Supp. 325.   The trial judge
submitted to the jury the question as to whether Janneck had be-
come so intemperate as to impair his health at the time the defend-
ant attempted to forfeit his contract of insurance.   There was a
mass of evidence given in behalf of the defendant to establish the
assertion made by the defendant, and there was a variety of evi-
dence to the contrary, and we are of the opinion that upon the
conflict thus presented to the jury by the evidence it was for the
trial judge to submit the question of fact to the jury, and that their
verdict is controlling.

In the course of the opinion delivered in Northwestern Life Ins.
Co. v. Muskegon Bank, 122 U. S. 502, 7 Sup. Ct. 1223, Mr. Justice
Miller said:

"While there may be, on the one hand, such a clear case of intemperate habits
as to justify the court in saying that such and such facts constitute a condition
of habitual intemperance, or, on the other, such an entire absence of any proof,
beyond an occasional indulgence in the use of ardent spirits, as to warrant the
opposite conclusion, yet the main field of inquiry, and the determination of the
question within it, must be submitted to the jury, and the question on this sub-
mission must be decided by them."

That case is referred to with approval in Insurance Co. v. Davey,
123 U. S. 744, 8 Sup. Ct. 334, and in the course of the opinion it
was said:

"The jury having found, under proper instructions, that the insured had not
become so far intemperate as to impair his health, that finding was not open to
review here."

The trial judge said in the course of the charge, viz.:

"If the deceased was drinking moderately, as they had given him permission
to do, and that he was in failing health, caused by something other than intoxi-
cating drinks, and they sought to cancel the policy, the law steps in, and will not
permit the company to do it, because it is required to keep within the terms and
conditions of the policy.   The company, when it issued the policy, knew that
he was in the habit of drinking moderately; therefore it assented to that; and
it could only cancel the policy when it had knowledge or was in possession of the
facts which led it to believe that the insured was drinking to excess, or was so
intemperate that it impaired his health. * * * It is a question of fact for you
to determine.   You must examine the evidence, and apply the facts to the law
as I have stated it to you.   It is a question for you to say whether, under the
terms of this policy, the deceased was intemperate in his habits, and whether,
by reason of those intemperate habits, it impaired his health.   If it did, then the
defendant had a right to cancel the policy."

It seems the language used by the trial judge is as favorable as the defendant was entitled to.

The learned counsel for the appellant asked the court to charge:

"That the defendant is the sole judge, under the laws[1] of the policy, whether a state of facts existed in October, 1893, which entitled it to cancel the policy, and terminate the contract of insurance."

In response thereto the court observed:

"I decline to vary my charge upon that point."

We think the exception taken presents no error.

Upon the request of the defendant the court charged the jury that, if they found that Bright's disease was produced or caused by Janneck's intemperance, they must find a verdict for the defendant, provided they found he was intemperate in his habits. Thereafter the counsel for the defendant asked the court to charge that:

"If he had Bright's disease, and it was produced by some other cause, if his intemperance aggravated the disease, their verdict must be for the defendant."

In response to that request the court remarked:

"Yes, if his intemperance aggravated the disease, as I have explained it to you. I am inclined to think, however, that he is not precluded from drinking moderately."

To that the defendant took an exception, which we think presents no error. Thereafter the counsel for the appellant asked the court to charge:

"Under the evidence of the case, his having Bright's disease, he would have no right to drink at all, in view of the evidence given by the physicians in the case."

In response to that request the court observed, viz.:

"I will leave that to the jury, under all the circumstances, whether he had a right to or not."

An exception was taken, which we think presents no reversible error.

We have looked at some other exceptions to which our attention has been directed by the learned counsel for the appellant, and are of the opinion that they do not present reversible error. We think the verdict of the jury upon the conflicting evidence must be allowed to stand.

Judgment and order affirmed, with costs. All concur.

[1] Thus in printed case at folio 473.