Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Alfred A. Cook, for appellants.
John M. Perry, for respondent.

SCOTT, J.  This appeal presents only the question whether or not the appellants should have included in their accounts as executors the unsold real estate of William B. Nelson, their decedent.  Incidentally, of course, this involves the question whether or not the appellants, as executors, are entitled to commissions upon such real estate.  Section 2730 of the Code of Civil Procedure provides that commissions shall be paid to executors and administrators upon "all sums of money" received and paid out.  The construction heretofore given to this section has been that executors are not entitled to commissions upon specific securities, or upon unsold real estate, bequeathed in trust, in advance of their conversion into money.  McAlpine v. Potter, 126 N. Y. 285, 27 N. E. 475; Phœnix v. Livingston, 101 N. Y. 451, 5 N. E. 70; Robertson v. De Brulator, 188 N. Y. 301–316, 80 N. E. 938.

Without attempting a minute analysis of the provisions of the will, it will suffice to say that in our opinion the title to the real estate never passed to the executors as such, but at once devolved upon the executors as trustees, subject to the power given to the executors to sell so much of it as might be necessary to enable them to complete their executorial duties.  Nor do we consider it necessary to determine whether or not the will intended to work an equitable conversion of the real estate into personalty.  Even where such a conversion is effected, we have been referred to no authority for the proposition that before actual conversion the real estate is to be considered as money, for the purpose of awarding commissions to the executors.

The decree, in so far as appealed from, is right, and should be affirmed, with costs to both parties appearing on the appeal, and payable out of the estate.  All concur.

(120 App. Div. 442)

MILLER v. CAR TRUST INV. CO.

(Supreme Court, Appellate Division, Second Department.  June 7, 1907.)

CORPORATIONS—CONTRACT FOR SALE OF STOCK—ALTERNATIVE STIPULATIONS—PERFORMANCE.

Where a trust company, owning practically all of a coal company's stock, contracted with plaintiff that he might have a year's option to purchase such stock, and that the coal company's monthly net profits should be divided with him, he to make good any failure of the net earnings to equal the sum to be retained by the trust company, and the profits showed a large excess over the amount to be earned for the use of the trust company, it could not deprive plaintiff of his right to a division, nor make him liable for a deficiency in earnings by causing the coal company to vote a $2,500 salary to its president and charge off $9,000 for depreciation in the value of the company's leases; the provision of the contract that disputes between the parties affecting the policy and management of the coal company should be decided by its directors not enabling the company to deprive plaintiff of his share of the profits.

Appeal from Trial Term, Orange County.

Action by William W. Miller against the Car Trust Investment Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, GAYNOR, and MILLER, JJ.

John B. Stanchfield, for appellant.

John A. Dutton, for respondent.

WOODWARD, J. The defendant corporation was the owner of practically all of the common and preferred stock of the Rio Grande Coal Company, a corporation organized and conducted for the purpose of operating certain coal mines, under leases, in the state of Texas. The defendant, by a written contract, the basis of this action, gave the plaintiff an option to purchase or place the stock of the coal company within one year at $101,200. It was provided in this contract that the defendant would set apart, or cause to be set apart, the monthly profits of the said Rio Grande Coal Company, applicable to dividends, from the 1st day of October, 1898, to the 1st day of October, 1899, and out of such profits it would retain for itself the sum of $421.67 per month, and it would then pay, or cause to be paid, to the plaintiff, out of such profits, if sufficient therefor, the sum of $300 per month. That it would accumulate, or cause to be accumulated, the remainder of said monthly profits of said Rio Grande Coal Company, if any, left after the payment of the said monthly sums, until the end of said year, and at the expiration of said year it would pay, or cause to be paid, to the plaintiff, two-thirds of all of such accumulated profits, if the plaintiff should purchase from the defendant during said year the capital stock of the said Rio Grande Coal Company under the option, and, if plaintiff did not so purchase said stock, it would then pay, or cause to be paid, to the plaintiff, one-third of such accumulated profits, in addition to the aforesaid monthly payments. That this contract contemplated a monthly adjustment, and had in contemplation the profits of each and every month over and above the cost of operation, is clearly shown by the covenant on the part of the plaintiff, who undertook to and did guaranty that:

"The aforesaid monthly net profits of the Rio Grande Coal Company, during the continuance of this agreement, shall be not less than $421.67 per month, which sum, if earned, shall be paid monthly to the party of the first part from the aforesaid profits of the company; but, if such profits of any month shall not equal four hundred and twenty one $67/100 dollars ($421.67), then the deficiency shall be made good and paid by the party of the second part."

The plaintiff did not purchase the stock under the option, and this action is brought to recover damages, on the ground that the defendant did not cause the Rio Grande Coal Company to pay over the sums due to the plaintiff under the agreement. The defendant, in answering, alleges that the plaintiff is not entitled to any sum whatever, because of the fact that the Rio Grande Coal Company, at the close of the year, voted a salary of $2,500 to its president, and charged off the sum of $9,000 for depreciation in the value of the leases under which the company operated, this being the proportion which

one year bore to the time of the leases, and the defendant counterclaims for a sum alleged to be due to the defendant by reason of the profits failing to reach the sum of $421.67 per month, by reason of these charges upon the income. The learned court below has found in favor of the plaintiff, holding that the salary charge, and the depreciation charges made by the Rio Grande Coal Company under the dominion of the defendant, were not within the contemplation of the parties, and operate to defraud the plaintiff of his rights under the contract. From the judgment entered the defendant appeals.

It is undoubtedly true that the Rio Grande Coal Company had a right to make any kind of a charge it might deem proper for depreciation, so far as its own affairs were concerned; but it could not change the effect of the contract between the plaintiff and defendant by arbitrarily disposing of the monthly profits of operation which were applicable to dividends. The defendant contracted, for a good consideration, that it would cause the monthly profits of the coal company to be disposed of in a certain manner, and the monthly profits fairly within the contemplation of the parties, as clearly appears from the evidence, were the profits applicable to dividends; that is, the net profits after the expenses of operation had all been met. The contract was for a monthly adjustment, not for adjustment by means of jugglery in bookkeeping at the end of the year by the Rio Grande Coal Company, and the provision in the contract that disputes "between the parties hereto, affecting the policy and management of the Rio Grande Coal Company, * * * shall be referred to and decided by the board of directors of said Rio Grande Coal Company," was not designed to give that company the right to deprive the plaintiff of the profits under his contract, but was made in contemplation of the plaintiff's natural right to have a voice in the management of the corporation, in relation to which he had contracted to make good deficiencies in income during a period of one year. It was certainly not intended to give sanction to a fraudulent use of power to deprive the plaintiff of his rights. The statements of the Rio Grande Coal Company made at intervals during the contract term showed profits applicable to dividends, and the plaintiff has recovered judgment for the amount shown to have been earned as such profits, and we see no reason for interfering with the result. The fair construction of the contract, in the light of all the circumstances, is that placed upon it by the court below. Any other construction would entitle the defendant to recover upon its counterclaim, and no one, reading the contract, in the light of the surroundings, would undertake to say that the plaintiff became liable for a deficiency in earnings, where the profits of the company showed a large excess over the amount stipulated to be earned for the use of the defendant.

The judgment appealed from should be affirmed, with costs. All concur.