The determination as to this piece of property should be annulled, and the matter remitted to the commissioners for further consideration, unless the respondent stipulates to increase the damages from $30 to $255.75, in which case the award is so modified, and, as modified, is affirmed, without costs.

(128 App. Div. 13.)

PEOPLE ex rel. JAMAICA WATER SUPPLY CO. v. STATE BOARD OF TAX COM'RS.

(Supreme Court, Appellate Division, Third Department.    September 17, 1908.)

1. TAXATION—FRANCHISES—VALUATION.
    The value of a franchise for purposes of taxation is to be ascertained in the same manner as the value of any other property, so far as its nature permits.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 625.]

2. SAME.
    In assessing the special franchise tax against a water company owning tangible property outside the streets of a city and tangible property in the streets thereof, and intangible property in such streets, each class of property must be considered as contributing pro rata according to the respective values of the net earnings of the company; and the actual value, and not the cost, of the real estate owned by the company, must be considered, and the value of the intangible property must be determined by basing its value on the net earnings and capitalizing such earnings.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 625.]

3. SAME.
    The intangible property of a water company possessing no exclusive right to occupy the streets of a city is given a value for taxation because it is supposed to be earning an income, and when the company's earnings bring no adequate return, with good management, such intangible rights have but little value.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 625.]

4. CORPORATIONS—DIVIDENDS—NET INCOME.
    The net income of a corporation for dividend purposes cannot be determined until all taxes, depreciation, maintenance, and up-keep expenditures have been deducted.

5. TAXATION—FRANCHISES—VALUATION.
    The value of the property of a water company, especially its franchise and good will, cannot be ascertained until the franchise tax and all the other taxes and a proper replacement fund have been deducted from the current earnings.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 625.]

6. SAME.
    In determining the value of property for taxation, based principally on its earnings, the average earnings and expenses for a series of years, or for such time as is reasonably available, must be considered.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 625.]

7. SAME.
    In determining the value of the intangible property of a water company for the assessment of the franchise tax, there should be deducted from the earnings of the company salaries, expenses of maintenance, and taxes, including the franchise tax, together with such percentage of earnings as is reasonably necessary to create a fund for the replacement of the plant, and the balance of the earnings should be treated as the actual net earnings, and 6 per cent. should be deducted as a fair return on the value of the real estate and other tangible property, and the surplus

earnings should then be capitalized at 6 per cent., and the result will represent the fair value of the intangible rights of the company, to which should be added the value of the tangible property, and the result represents the value of the special franchise, which should be assessed on the same basis as other property is assessed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 625.]

Appeal from Special Term, Albany County.

Certiorari by the people, on the relation of the Jamaica Water Supply Company, against the State Board of Tax Commissioners, to review the decision of the commissioners assessing the special franchise tax against relator. From an order confirming the report of the referee and the assessment, relator appeals. Annulled, and matter remitted to the commissioners for further consideration.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

E. H. Van Vechten, for appellant.

Francis K. Pendleton (David Rumsey and Curtis A. Peters, of counsel), for city of New York.

James T. Walsh, Deputy Atty. Gen., for the People.

JOHN M. KELLOGG, J.   The report of the referee sustaining the assessment fixes the value of the tangible property of the relator in the streets at $396,244.90, its tangible property outside the streets at $316,018.28, and the gross revenues of the company at $102,055.62, from which is deducted salaries, $8,000; clerks and office expenses, $4,114.01; legal expenses, $1,185.55; pumping expenses, $12,229.56; general expenses, $2,596.82; maintenance, $3,789.37—total deductions, $32,005.91, leaving net earnings, $70,049.71. From which the referee deducted 5 per cent. return (which includes taxes) on cost to reproduce tangible real estate in streets in Queens county ($417,099.-90), $20,854.99. He also deducts 5 per cent. return (which includes taxes) on cost to reproduce buildings and machinery, stand pipe, etc. (pumping stations 1 and 2, $245,000), $12,250. He also deducts 5 per cent. return (which includes taxes) on original cost of all land owned by relator ($25,162.01), $1,258.10—a total of $34,363.09, leaving final net return of $35,686.62, which said last sum he capitalized at 7 per cent., giving the value of the relator's intangible part of the special franchise in the county of Queens, $509,808.85, to which is added the tangible property in the street, making the total value of the special franchise, $906,053.75. The relator's real estate was found to be actually worth $71,018.28, exclusive of the plant; but its actual cost was $25,162.01. The seventeenth finding of fact is as follows:

"That the increment of value of the relator's land, which accrued to the relator and which amounts to $45,856.27, is a further sinking fund owned by the relator."

The increase in value arose from the general improvement of real estate values in that locality, and not by any special uses to which the real estate was put.

The special franchise tax was not intended as an instrument for the punishment or torture of corporations, but is part of a just and equita-

ble system of taxation devised to require every person and corporation to pay a pro rata share of the public expenses, based upon the fair valuation of property. The value of a franchise should therefore be ascertained in the same manner as the value of any other property, so far as its nature permits. It is manifestly unfair to treat this intangible property in the street, which is of no use to the public, except as it may sell it, if it has a value as earning the greater part of the net income of a corporation. In a water pumping plant we may assume that its real estate, its pumping station, its mains, its special franchise, and each particular item of property perform their proper offices in producing the net earnings, and it would be unfair to say that any one piece of property necessarily employed in such a business produces a greater per cent. of earnings than any other piece of property so employed. The net result comes from the use of the entire property and each part of it, and each part of the property is a necessary instrument in producing the result.

It is manifest that the intangible property in the street, which is the mere right to lay the water mains under the street, cannot be considered as the chief revenue producer of the relator. Here are three distinct classes of property, the use of which produces the net earnings— the tangible property outside the street, the tangible property in the street, and the intangible property in the street. Each of these classes of property should properly be considered as contributing pro rata according to their respective values to the net earnings of the company. In determining the value of the tangible property the cost of reproduction was considered by the commission and the referee as a proper basis; but it is difficult to understand upon what ground they refuse to give to the relator the actual value of its real estate. The term "increment of value to be used as a sinking fund" has no place in the assessment of a special franchise. The question is: What is the relator's property, tangible and intangible, actually worth? Actual value, and not cost, is the true basis for taxation. It was, therefore, clearly error to refuse to recognize the actual value of the real estate owned by the relator. The intangible property in the street has no market value, and there is no way to determine its true value, except by basing its value upon the earnings which such rights produce; and such value can only be determined by treating it as a part of the plant, and basing its value upon the net earnings, and then capitalizing such earnings.

It is common experience that a long-term bond, properly and amply secured, bearing 4 per cent., produces a fair return upon an investment, the safety of the principal of which is beyond question. The water company has no exclusive right to occupy the streets. The same privilege may be granted to another water company, and ruinous competition may follow. A public water plant may be established, or condemnation proceedings may be instituted to acquire the relator's property for public use. The prosperity of the relator is limited by circumstances and local conditions. Its rates and kind of service may be more or less within the regulation of the public. If by competition, or otherwise, its business is rendered unprofitable, its plant has little

value for use elsewhere. It is evident that the stock of such a company, with such an uncertain tenure, to be marketable at par, should produce a greater return than a first-class bond. Perhaps, without discussing it, we may assume, until the evidence shall furnish us a better guide, that such a stock must earn at least 6 per cent. in order to be worth par, or in order that the business may be considered profitable or successful. If a water company can pay but 6 per cent. upon the actual value of its tangible property, it is probable that the intangible rights which it has in the streets would not be very desirable and could not be considered as revenue producers. Such intangible property is given a value for taxation, because it is supposed to be earning an income for the company; but if the company earns no adequate return, with good management, such intangible rights have but little value. The intangible rights attach to the fixed property in the streets, and form the special franchise which is to be taxed; and if the business is a losing venture, and is not producing an income of at least 6 per cent., it is perhaps accorded a full value in treating the tangible property in the streets as producing equally with the other tangible property of the company.

The net income of a corporation for dividend purposes cannot be determined until all taxes, depreciation, maintenance, and up-keep expenditures have been deducted. Otherwise the dividend is not paid from the earnings, but by a depreciation of the capital account. To earn a dividend and be honest with itself, its stockholders, its creditors, and the public it has to serve, a corporation cannot distribute earnings at the expense of its capital. If a corporation, year after year, should distribute its earnings, after deducting expenses, making no allowance for taxes, or the replacement or up-keep requirements of the plant, in time its entire capital would be gone by the payment of unearned dividends. The value of the property of the company, especially its franchise and good will, cannot be ascertained until the franchise tax, and all the other taxes, and a proper replacement or up-keep fund, has been deducted from the current earnings. If this is not done, an attempt to arrive at the value of property, based upon its net earnings, is deceptive. In this case the special franchise tax is fixed at $10,597.55; the tax upon other real estate was $1,022.51; the taxes paid the State Comptroller $609.85. These items were not deducted from the gross earnings in determining the net earnings of the company. It is manifestly impossible to determine what the net earnings of the company are until all taxes and charges are first deducted, or provision made therefor.

It is apparent, from the report and the opinion of the referee, that in allowing the relator 5 per cent. return upon the actual cost of its real estate and 5 per cent. return upon the value of its other tangible property, he feels that the relator can afford to pay the taxes from such return. Such conclusion is not in accord with the ordinary business experience of the country, when we see the best industrial and manufacturing stocks, paying from 6 to 7 per cent. free of tax, with a reasonable allowance for up-keep and maintenance, selling at par or less. In determining the value of property, based principally upon its

earnings, the earnings and expense for one year cannot alone be considered; but it is the average earnings and expense for a series of years, or for such time as is reasonably available. Perhaps the evidence would justify the conclusion that the amount allowed for maintenance is sufficient to replace from time to time, as may be necessary, the mains, hydrants, and some of the other tangible property of the company. But it must have expensive pumps and machinery and other property, which is liable to serious depreciation by use, and in time to actual destruction, so that prudence would require that each year a certain reasonable sum be laid aside as a replacement or upkeep fund, for such contingencies as are not covered by the ordinary maintenance charges. If such fund is not maintained, the property is being robbed for the purpose of paying the dividends or exaggerating its paper value.

For the purposes of this case these conclusions lead to the following basis as a correct means of arriving at the value of the intangible property in the street: In addition to the items deducted by the referee from the earnings, there should also be deducted all taxes, including approximately the amount of the special franchise tax to be assessed. There should also be deducted such percentage of earnings as the evidence upon a further hearing may show to be a reasonable and proper fund for the replacement and up-keep of the plant in respects which are not ordinarily covered by the current maintenance account, and the balance of earnings remaining should be treated as the actual net earnings of the company, for the purpose of determining the value of its intangible property in the street. Six per cent. should then be deducted as a fair return upon the value of the real estate and other tangible property. The surplus earnings should then be capitalized at 6 per cent., and the result represents the fair value of the intangible rights in the streets, to which should be added the value of the tangible property in the streets, and the result represents the value of the special franchise. The record shows that the property in the locality is assessed at 89 per cent. of its actual value. Eleven per cent., therefore, of the value of the special franchise, should be deducted to equalize it with the assessed value of other property. This latter result is the value of the special franchise for the purpose of taxation.

The order appealed from, and the determination of the State Board of Tax Commissioners, should be annulled, and the matter remitted to the commissioners for further consideration. All concur, except COCHRANE, J., not voting.