The People of the State of New York ex rel. New York Railways Company and Frank L. Hall and Others, as Bondholders, etc., Relators, *v.* The Public Service Commission of the State of New York for the First District and Edward E. McCall and Others, as Commissioners Thereof, Respondents.

First Department, January 18, 1918.

**Public Service Commissions Law — street railroads — reorganization — authority of Commission to order street railroad to reserve fund for maintenance and depreciation — authority to issue stock or bonds to provide for depreciation.**

Under section 4 of the Public Service Commissions Law, providing that the Commission shall possess " all powers necessary or proper to enable it to carry out the purposes of this chapter," said Commission, in order to carry out a plan of reorganization of a railway company, having authorized the issue of stocks and bonds and consented to the execution of first

real estate and refunding gold bonds and of adjustment mortgage five per cent income bonds subject to the first real estate and refunding mortgage, both of which provide that the company will keep its roads adequately equipped, etc., may order said company to reserve twenty per cent of its gross operating revenues, month by month, to provide for the maintenance and depreciation of its properties during the month.

Allowance for depreciation and obsolescence is a part of the operating expenses of a corporation.

A corporation has no authority to issue bonds or stock to provide for depreciation and obsolescence.

SCOTT, J., dissented, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 17th day of April, 1913, directed to the Public Service Commission of the State of New York for the First District and to Edward E. McCall and others, as commissioners thereof, commanding them to certify and return to the office of the clerk of the county of New York all and singular their proceedings had in directing the relator to set aside twenty per cent of its gross receipts to pay for maintenance and depreciation.

*Richard Reid Rogers* of counsel [*J. Tufton Mason* with him on the brief], *J. L. Quackenbush*, attorney, for the relator New York Railways Company.

*Burt D. Whedon* of counsel [*S. Sidney Smith* with him on the brief], *Wing & Russell*, attorneys, for the relators Hall and others.

*Oliver C. Semple* of counsel [*William L. Ransom*, attorney], for the respondents.

SMITH, J.:

Pursuant to foreclosure decrees of the Circuit Court of the United States the property and franchises of the Metropolitan Street Railway Company were sold to a purchasing committee of bondholders acting under a reorganization plan. Thereafter the purchasers conveyed the property and franchise thus purchased to the New York Railways Company, the relator in this proceeding. This reorganization plan contemplated the formation of the relator company with a capital stock of $17,500,000 par value, the issuance by said corporation of $16,768,100 face value of thirty-year first real

340   People ex rel. N. Y. R. Co. *v.* Pub. Serv. Comm.

First Department, January, 1918.          [Vol. 181.

estate and refunding mortgage four per cent gold bonds, and of $31,933,400 face value of thirty-year adjustment mortgage five per cent income gold bonds, subject to the first real estate and refunding mortgage. In respect to the income bonds, the reorganization plan provided that the mortgage securing the same should provide for such method or methods of determining the net income and should be in such form as the said joint committee should prescribe. The adjustment mortgage as thus approved by the joint committee provided for the payment from the net income of the corporation of five per cent interest provided the same should be earned, and provided that the net income should be ascertained by deducting from the gross income " the expenditures actually made *and reserves effectively set apart* as shall be properly chargeable against such gross earnings and income during such period." Both mortgages contained this provision: " At all times the Company will keep its said railroads owned and leased and the railroads of the auxiliary companies adequately equipped with cars and other equipment and rolling stock and will maintain in good order and condition, reasonable wear and tear excepted, all such cars and other equipment and rolling stock, and whenever any such cars or equipment or rolling stock shall be worn out or be destroyed, the Company promptly will cause the same to be replaced by other cars or equipment or rolling stock of at least equal value and capacity, so that at all times the value and capacity of such cars and other equipment shall be fully kept up; and at all times the Company will set apart, use and apply for that purpose so much of the earnings of the property mortgaged and pledged hereunder as may be required for such maintenance and replacement of such equipment subject to the lien hereof." Both mortgages further provided: " The Company will not cause, permit or suffer any auxiliary company to become indebted except for current operating debts incurred in the ordinary course of business, or to issue any evidence of indebtedness to pay or to reimburse any auxiliary company for any outlay for any improvement or extension the cost of which should properly be chargeable as an operating or maintenance expense *or against any fund reserved for maintenance or depreciation.*"

In order to carry out the plan of reorganization the Commission finally made three orders: (1) On January 24, 1912, authorizing the issue of the stocks and bonds; (2) on February 27, 1912, consenting to the execution of the mortgages; (3) on February 27, 1912, requiring, among other things, the company to reserve twenty per cent of its gross operating revenues month by month to provide for maintenance and depreciation of its properties during the month. The last order as to the provision mentioned was confirmed on rehearing by the Commission. It is to review this last order that this proceeding is brought. The order was made upon abundant proof as to the reserve fund necessary for maintenance and depreciation and is not questioned upon that ground. The sole contention of the relator is that whether right or wrong it is the province of the corporation directors and not that of the Commission to determine what amount should be set aside for that purpose.

Preliminarily it is well to note that this order was made in February, 1912. The twenty per cent of the gross income has been set aside as therein required. For the actual maintenance expenses about sixteen and one-half per cent has been required and about three and one-half per cent has been set aside to provide for depreciation and obsolescence. At times upwards of $3,000,000 has thus accumulated. The relator has been able to pay only three per cent interest upon these income bonds. In pursuance of the reorganization plan these bondholders are entitled for a time to name directors to a number one less than a majority of the board. If the amount of this fund to be reserved for depreciation were left to the directors it is fair to assume that with so large a representation of the income bondholders upon the board the moneys thus reserved would largely be applied to the payment of the interest upon these bonds up to five per cent, and the fund reserved for depreciation would be reduced to a minimum. The amount now reserved is shown by the evidence to be no more than is necessary to take care of depreciation and obsolescence. If the relator's contention be sound these directors can entirely deplete this fund for the payment of this interest until a time comes when such a fund will be necessary to restore the road to a proper standard and there

will be no fund applicable thereto and the Commission charged with the duty to protect the public is powerless to prevent the waste.

In *People ex rel. Binghamton L., H. & P. Co.* v. *Stevens* (203 N. Y. 7) application was made for leave to issue bonds and preferred stock for the purpose of paying certain promissory notes outstanding and certain floating indebtedness. The Commission granted the permission but conditioned the same upon the corporation charging off upon the books $100,000 of stock liability appearing thereupon. Upon certiorari the Appellate Division sustained the order. (143 App. Div. 789.) This ruling was reversed by the Court of Appeals, *first,* upon the ground that the Commission was not authorized to condition its assent upon the agreement of the corporation to charge off this liability; and *second,* upon the ground that it did not appear from the evidence that these promissory notes did not represent operating expenses including such a fund as should have been reserved for depreciation and obsolescence. The court there held that the corporation could not properly issue long term bonds for the purpose of paying repairs made necessary by depreciation and obsolescence and that the Commission was not authorized to assent thereto. Extracts from the opinion show clearly the extent of the holding. " The question as to what expenditures are a proper basis *for permanent capitalization* is an important one, always a proper and necessary subject for consideration, not alone by the directors of a corporation, but by any Commission that has authority to grant or withhold its consent to the issue of new stock or bonds which are to become a part of the corporation's permanent capitalization." Again: " We are nevertheless of the opinion that it was the duty of the Commission to determine whether the stock and bonds proposed by the relator were to secure money to pay floating indebtedness incurred in the ordinary running expenses of the corporation. Such determination by the Commission would not be substituting the judgment of the Commission for the judgment of the directors of the company in the management of its affairs at least if the directors of the company had wholly and intentionally ignored the self-evident proposition that except for special and extraordinary circumstances some part of the expenses of renewing

machines and plant originally charged to capital account must be paid as a part of the operating expenses of a corporation from year to year.   We refer to the necessity of a corporation providing for some part of the expenses of renewing machinery and plant from year to year as self-evident, because it has been so considered and expressed by the courts in many cases. (*People ex rel. Jamaica Water Supply Company* v. *Tax Commissioners,* 196 N. Y. 39, 57, 58; *S. C.,* 128 App. Div. 13, 17, 18; *People ex rel. Third Avenue R. R. Co.* v. *Tax Commissioners,* 136 App. Div. 155, 159; affd., 198 N. Y. 608; *City of Knoxville* v. *Knoxville Water Company,* 212 U. S. 1.)

"In the *Jamaica Water Supply Company* case this court said: 'We suppose that judicial notice may be taken of the fact that in the conduct of many industrial enterprises there is a constant deterioration of the plant which is not made good by ordinary repairs, which of course, operates continually to lessen the value of the tangible property which it affects. The amount of this depreciation differs in different enterprises, but the annual rate is usually capable of estimate and proof by skilled witnesses.   No corporation would be regarded as well conducted which did not make some provision for the necessity of ultimately replacing the property thus suffering deterioration.'   (p. 57.)

"In that case in the Appellate Division it was said:   'The net income of a corporation for dividend purposes cannot be determined until all taxes, depreciation, maintenance and up-keep expenditures have been deducted.   Otherwise the dividend is not paid from the earnings but by a depreciation of the capital account.'"   Again, "In the *Third Avenue Railroad* case it was said:   'The annual ordinary expenditures for repairs, replacements and renewals upon such a property cannot be assumed to make it unnecessary to provide a fund which will replace its engines, electrical equipment and other physical property which at some time must be replaced.' (p. 159.)

"In the *City of Knoxville* v. *Knoxville Water Co.* case it was said:   'It is entitled to see that from earnings the value of the property invested is kept unimpaired, so that at the end of any given term of years the original investment remains as it was at the beginning.   It is not only the right of the

company to make such a provision, but it is its duty to its bond and stockholders, and, in the case of ·a .public service corporation at least, its plain duty to the public. If a different course were pursued the only method of providing for replacement of property which has ceased to be useful would be the investment of new capital and the issue of new bonds or stocks. This course would lead to a constantly increasing variance between present value and bond and stock capitalization — a tendency which would inevitably lead to disaster either to the stockholders or to the public, or both.' * * *

" It will not be denied that fuel and such other materials as are consumed from day to day and the labor incurred in daily maintenance should be paid for from the earnings of the corporation as a part of its running expenses prior *to the payment of interest upon bonds* or dividends upon capital stock. A reasonable consideration of the interests of a corporation and the ultimate good of its stock and bondholders, and a regard for the investing public and that fair dealing which should be observed in all business transactions, require that machines and tools paid for and charged to capital account but which necessarily become obsolete or wholly worn out within a period of years after the same are purchased or installed, should be renewed or replaced by setting aside from time to time an adequate amount in the nature of a sinking fund or that by some other system of financing the corporation put upon the purchaser from the corporation the expense not alone of the daily maintenance of the plant but a just proportion of the expense of renewing and replacing. that part of the plant which although not daily consumed must necessarily be practically consumed within a given time."

I have quoted thus fully from the opinion to show, *first,* that the allowance, for depreciation and obsolescence must be deemed a part of the operating expenses of a corporation and *secondly,* that a corporation is not authorized to issue bonds or stock to provide therefor, and that the Public Service Commission is not authorized to consent to such an issuance. It is true that the proposition there decided was not the exact proposition here presented but the converse of the proposition is squarely presented. If as there held

new stock or bonds cannot issue to make good depreciation and obsolescence and if as contended by the relator the Commission is not authorized to require a sufficient fund to be set apart to provide for the same the Legislature has wholly failed to accomplish its purpose to provide protection for the investing and traveling public. That this was the purpose of the creation of the Public Service Commission is held by all the authorities. Not only is the issuance of new stock and bonds made subject to the approval of the Commission but explicit power is given to the Commission to provide complete and adequate equipment for the convenience of the traveling public. Section 50 of the Public Service Commissions Law (Consol. Laws, chap. 48; Laws of 1910, chap. 480) gives power to the Commission to order repairs and changes; to order alterations in terminal facilities, in motive power, and equipment; to provide what in its judgment is "adequate service or facilities for the transportation of passengers or property." Under settled rules of statutory interpretation power is impliedly given to take such action as may be necessary to make effective the powers explicitly given to accomplish the purpose of the enactment. But in this case we need not resort to the rule of implied powers for by section 4 of the act it is provided that " There shall be a Public Service Commission for each district, and each Commission shall possess the powers and duties hereinafter specified, *and also all powers necessary or proper to enable it to carry out the purposes of this chapter.*" If this power be denied, the directors are at liberty to divert this fund necessary for the maintenance of the value of the security and also necessary for adequate service to the traveling public to the payment of the interest on these income bonds. When, therefore, in the course of time it becomes necessary to replace obsolescent and depreciated equipment what is the situation created? No fund will have been reserved for that purpose. The Commission is not authorized to assent to the issuance of new securities therefor. The necessary replacement cannot be made for lack of funds and of ability to procure them. The corporation becomes unable to perform its public functions and corporate death is inevitable. Another reorganization becomes necessary with the consequent material impairment

of securities. Even if power existed to raise money for replacements by the issue of new securities the fatal ending is only postponed. If the Legislature has left this loophole in its scheme for the protection of the security holders it has made a serious blunder. Such a fate has befallen too many of these corporations and it was largely to prevent just such catastrophies that this Commission was created. The court should not so construe the powers given as to permit the very evils which the Legislature has sought to remedy. This holding now made does not substitute the judgment of the Commission for that of the board of directors except so far as may be absolutely necessary to provide for the maintenance of the value of the securities and of adequate facilities for transportation by the requirement to pay what is deemed in law " operating expenses " from income, and as I read the statute in view of the purposes of its enactment this authority is there given. The question of the impairment of the obligation of contracts is not here presented *first,* because the contracts were made in view of the existing powers of the Commission, and *secondly,* because the mortgages both contemplate the application of gross receipts to the payment of operating expenses and to " reserves effectively set apart " in which these items are included. While the powers given to the Commission have been in some cases strictly construed, no case has denied to the Commission powers absolutely necessary to accomplish the purposes of its creation.

In my judgment the order was properly made, and the writ of certiorari should be dismissed, and determination of the Commission should be confirmed, with fifty dollars costs and disbursements to respondents.

CLARKE, P. J., PAGE and SHEARN, JJ., concurred; SCOTT, J., dissented.

SCOTT, J. (dissenting):

I am unable to concur in the decision about to be made simply because I cannot find in the statute any authority for the order brought up for review. I do not for the purposes of this appeal question the proposition that prudent management of a corporation like the relator requires that some

part of its earnings should be set aside for the establishment of a fund to meet possible future depreciation of plant, nor do I question the power of the Legislature to authorize the Public Service Commission to determine what proportion of the earnings should be so devoted.

The difficulty I find is that the Legislature has not conferred such power. The respondent relies on section 52 of the Public Service Commissions Law, but that section as I read it relates only to the manner of keeping the accounts, and has no reference to the manner in which the income share shall be expended. My brother SMITH finds authority in the Commission to make the order appealed against, in the broad language of section 4 of the Public Service Commissions Law which confers upon the Commission " all powers necessary or proper to enable it to carry out the purposes of this chapter." If the compulsory establishment of a depreciation fund was one of the declared purposes of the act, this clause would undoubtedly authorize the order sought to be reviewed. But the difficulty I find is that it is not one of these declared purposes. It is for this very reason that such extensive, and even minute, authority is given to the Commission with regard to other matters, that I am unable to spell out implied authority to do that which the Commission has undertaken to do here. If the Legislature had desired to invest the Public Service Commission with power to prescribe what amortization funds should be taken out of income, it could have done so very simply and in a few words. That it did not do so is suggestive that it did not intend to confer such power.

Writ dismissed and proceedings affirmed, with fifty dollars costs and disbursements.