HENRY F. GEARNS, Appellant, v. COMMERCIAL CABLE COMPANY, Respondent.

First Department, June 11, 1943.

*Beverly R. Myles* of counsel (*Michael J. Kiely, Jr.*, with him on the brief; *Haggerty, Myles & Wormser*, attorneys), for appellant.

*Theodore Kiendl* of counsel (*Lawrence E. Walsh* with him on the brief; *Davis Polk Wardwell Sunderland & Kiendl*, attorneys), for respondent.

TOWNLEY, J. This action was brought to recover the monthly payment for May, 1941, due under the defendant's retirement plan. Paragraph " 17 " of the plan provides: " No pension or gratuity shall be paid except out of the profits of the Company and no pension or gratuity or claim thereto shall be a charge upon or against or payable out of any of the capital assets of the Company.''

The issue that was tried was whether the defendant had earned profits during the years 1940 and 1941. This issue was submitted to the jury without objection by the plaintiff and the jury found for the defendant. This verdict unless unsupported by evidence disposes of this appeal.

There was ample evidence in the record to support the verdict. In fact, no other verdict was possible unless the claim of the plaintiff that depreciation must be ignored is sustained. In each year of the company's experience (including the years involved here) there was charged as an expense an amount representing the estimated depreciation of the company's physical properties. The amount so charged in the years 1940 and 1941 was sufficient, if disregarded, to change the loss shown for those years into a profit. There was no evidence which criticized the amount of such allowance, but plaintiff claims that such charge was improper in determining the question of profit within the meaning of paragraph " 17 " of the defendant's pension plan.

This claim cannot be sustained. The evidence clearly established that such charge was proper as a matter of accounting in determining profit. It is obvious that in conducting a business such as that carried on by the defendant, allowance must be made for depreciation of the highly perishable equipment necessarily involved. Depreciation has uniformly been allowed as an expense in determining profit. (*People ex rel. N. Y. R.*

*Co.* v. *Public Service Comm.,* 181 App. Div. 338, 343; *Martin* v. *DiMarco & Reimann, Inc.,* 264 App. Div. 234; *Knoxville* v. *Water Co.,* 212 U. S. 1.)

Plaintiff further seeks to support his right to payment because the defendant carried on its books an account designated as a Reserve for Pensions and Benefits and that there was a credit balance in this account sufficient to pay plaintiff's claim. A brief consideration of the history of this account so far as shown by this record completely disproves this contention.

Prior to 1906 the company maintained a pension plan based on endowment insurance policies issued in the name of the employee involved, one half of the premiums of which were paid by the employee and the balance by the company. No right of the plaintiff under this plan is involved here. In 1906 this plan was abandoned and one was established in which the employees made no contribution to the fund, the entire pension being paid by the company. During the continuance of the endowment insurance plan, the company received certain commissions on the endowment policies issued and these amounts with certain fines for inaccurate messages and other minor offenses of the employees were put into a fund which at the time the plan was abandoned was carried in an account known as " Endowment Insurance Suspense."

When the new plan was inaugurated in 1906, the balance in that account was transferred to a newly created account known as " Reserve for Pensions and Benefits." The original entry in this account represents the balance from the old Endowment Insurance Suspense account. In this connection, it may be noted that this balance was not made up of any moneys contributed by the employees. For several years after the establishment of the new system, credits similar to those above indicated accrued on the policies held under the old system. These credits as they accrued were added to the credit balance in the Reserve for Pensions and Benefits account and pension obligations were paid out of this account.

By 1922 the credits in this account were substantially exhausted and the company, in order to establish a credit against which pension payments could be charged, arbitrarily transferred from surplus account to pension account about $1,500,000. This was merely a bookkeeping transaction. No funds in fact were transferred and there was no segregation of such amounts from the general funds of the corporation. This credit was supplemented from time to time by other transfers as the disbursements from this account rendered further

credits necessary. Without some segregation of the funds it is obvious no trust fund was created which is applicable to the payment of plaintiff's claim. (*McKee* v. *Paradise*, 299 U. S. 119; *Hickok* v. *Bunting*, 67 App. Div. 560.)

There was a conceded deficit in capital assets of over $16,000,000. Certainly no pension payments could be made under the provisions of paragraph " 17 " of the plan until this deficit was restored.

The record as a whole clearly demonstrates the correctness of the jury's verdict, and the judgment entered thereon in the Municipal Court and the determination of the Appellate Term should be affirmed, with costs.

CALLAHAN, J. (dissenting). I dissent. The pension plan was part of a contract of employment granting rights to employees in the nature of insurance. In such a contract a provision for payment of pension out of " profits " should be construed in the popular sense, i. e., that profits meant the difference between earnings and expenses, and not in the technical sense, wherein in ascertaining profits a reserve for depreciation might be taken into consideration in determining whether such profits existed. (*Eyster* v. *Centennial Board of Finance*, 94 U. S. 500; *Mayer* v. *Nethersole*, 71 App. Div. 383; *Miller* v. *Car Trust Investment Co.*, 120 App. Div. 442, affd. 193 N. Y. 617.)

I find nothing in clause 17 of the pension plan which makes this rule of construction inapplicable. If the reserve set aside for depreciation is omitted, payment of pension in the present case would not constitute a payment out of capital assets. While plaintiff did not request the trial court to define " profits " nor make any requests to charge with respect thereto, as the case is a test and the error in construction of the contract fundamental, a new trial should be ordered.

But the necessity for reversal of the judgment need not rest on the error above indicated.

The pension reserve set up by defendant was a fund which at least in part must be deemed available to pay plaintiff's pension. Defendant may not be heard to say that there was no fund actually available for pension payment when it has taken moneys derived from fines imposed on its employees and from rebates received from insurance companies on premiums paid by the employees and defendant jointly, and set up these moneys on its books as a fund held for pension payments and a corporate liability. In *Willoughby Camera Stores* v. *Commissioner of Internal Revenue* (125 F. 2d 607) it was held that the setting up of a similar fund sufficiently implied a promise

to pay employees the amount thereof so as to make the refund deductible for tax purposes.

When moneys of the nature indicated were commingled by defendant with its own funds, this constituted a wrong, and defendant may not assert its own wrongdoing as a defense when called on to pay a pension. Under the circumstances, defendant would be estopped from denying the existence of a trust fund available for pensions, at least to the extent of the moneys so received from its employees.

Cases dealing with situations where the employer itself had furnished the funds, or had merely set up a bookkeeping reserve without actually receiving any moneys from the employees are not apposite.

In the light of the facts concerning the source of the contributions, it was error for the trial court to submit to the jury as a question of fact, whether there was a pension reserve in existence, and to charge the jury as requested by the defendant, that the existence of a bookkeeping account entitled '' Pension Reserve '' did not justify any verdict for the plaintiff without evidence that there was money or assets actually set aside for the benefit of pensioners.

The determination of the Appellate Term and the judgment of the Municipal Court should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., and COHN, J., concur with TOWNLEY, J.; CALLAHAN, J., dissents in opinion, in which DORE, J., concurs.

Determination affirmed, with costs and disbursements.