HENRY F. GEARNS, Appellant, *v.* COMMERCIAL CABLE COMPANY, Respondent.

Argued April 6, 1944; decided June 14, 1944.

106

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■

*Beverly R. Myles* and *Michael J. Kiely, Jr.*, for appellant. I. Respondent was a trustee of " commissions " on endowment policies of its employees received and credited by it to its pension reserve. (*People* v. *Formosa*, 131 N. Y. 478.) II. Respondent was estopped to deny existence of its trust relationship with respect to fines and commissions on endowment insurance. (*Wilson* v. *Rudolph Wurlitzer Co.*, 48 Ohio App. 450; *Schofield* v. *Zion's Co-op. Mercantile Institute*, 85 Utah 281; *George A. Fuller Co.* v. *Brown*, 15 F. 2d 672; *Rothschild* v. *Title Guarantee & Trust Co.*, 204 N. Y. 458; *Pickard* v. *Sears*, 6 A. & E. 469; *Cornish* v. *Abington*, 4 Hurl. & N. 549; *Tyler* v. *Mass. Ins. Co.*, 108 Ill. 58; *McLain* v. *School Directors*, 51 Penn. St. 196.) III. Defendant had surplus profits above capital assets as well as current profits. Depreciation was not a proper charge in computing such profits and assets. (*Eyster* v. *Centennial Board of Finance*, 94 U. S. 500; *Mayer* v. *Nethersole*, 71 App. Div. 383; *Purdue* v. *Ralph*, 100 F. 2d 518; *Miller* v. *Car Trust Investment Co.*, 120 App. Div. 442, 193 N. Y. 617.) IV. The pension reserve of $1,637,416.41 on the books of respondent company constituted a legal obligation to its pensioners. (*Willoughby Camera Stores* v. *Com'r. of Internal Rev.*, 125 F. 2d 607.) V. The pension reserve was used by respondent to eliminate its profits but recovery from such reserve has been denied to appellant by court below. VI. Manipulations of its corporate accounts by respondent should not create a bar to recovery by faithful employee. (*Wilson* v. *Rudolph Wurlitzer Co.*, 48 Ohio App. 450; *Sigman* v. *Rudolph Wurlitzer Co.*, 57 Ohio App. 4; *Schofield* v. *Zion's Co-op. Mercantile Institution*, 85 Utah 281; *George A. Fuller Co.* v. *Brown*, 15 F. 2d 672; *Miller* v. *Car Trust Investment Co.*, 120 App. Div. 442.) VII. The Trial Judge erred in making conflicting charges with reference to ambiguity in language in the pension plan. (*Kieran* v. *Hunter College Retirement Board*, 255 App. Div. 378; *Western Union Telegraph Co.* v. *Hughes*, 228 F. 885.)

*Theodore Kiendl, Ralph M. Carson, Frederick A. O. Schwarz* and *William H. Timbers* for respondent.   I. Defendant, without profits, was under no duty to pay a pension to plaintiff. II. Defendant's deduction of depreciation before determining profits was proper.   (*Jennery* v. *Olmstead,* 36 Hun 536, 105 N. Y. 654; *People ex rel. Jamaica W. S. Co.* v. *Tax Comrs.,* 196 N. Y. 39; *People ex rel. B. L. H. & P. Co.* v. *Stevens,* 203 N. Y. 7; *People ex rel. N. Y. R. Co.* v. *Pub. Ser. Comm.,* 181 App. Div. 339; *People ex rel. Third Avenue R. R. Co.* v. *Tax Commissioners,* 136 App. Div. 155, 198 N. Y. 608; *Knoxville* v. *Water Co.,* 212 U. S. 1; *Federal Power Comm.* v. *Pipeline Co.,* 315 U. S. 575; *Martin* v. *Di Marco & Reimann, Inc.,* 264 App. Div. 234, 289 N. Y. 841; *Winkelman* v. *General Motors Corporation,* 44 F. Supp. 960; *Gallin* v. *National City Bank of New York,* 155 Misc. 880.)   III. The account " Reserve For Pensions and Benefits " on defendant's books constitutes no legal obligation to plaintiff.   The pension reserve represents an estimate of contingent liability.   IV. It represents no segregation of assets and therefore is not a trust fund.   (*Sokoloff* v. *National City Bank,* 250 N. Y. 69; *Hickok* v. *Bunting,* 67 App. Div. 560; *Matter of Pratt,* 156 Misc. 328; *McKee* v. *Paradise,* 299 U. S. 119; *Continental Casualty Co.* v. *Powell,* 83 F. 2d 652; *Leo* v. *Pearce Stores Co.,* 54 F. 2d 92; *Marble* v. *Marble,* 304 Ill. 229; *Lucas* v. *American Code Co.,* 280 U. S. 445; *David J. Joseph Co.* v. *Com'r. of Internal Revenue,* 136 F. 2d 410; *Spring Canyon Coal Co.* v. *Commissioner of Int. Rev.,* 43 F. 2d 78.)   V. Plaintiff is not entitled to reach the commissions on endowment insurance credited by defendant to the pension reserve.   (*People* v. *Formosa,* 131 N. Y. 478; *Persky* v. *Bank of America Nat. Assn.,* 261 N. Y. 212.)   VI. The trial court correctly reserved to itself the determination of the question of the existence of any ambiguity in the pension plan. (*Haefeli* v. *Woodrich Engineering Co.,* 255 N. Y. 442; *Rooney* v. *Brogan Construction Co.,* 194 N. Y. 32; *Walsh* v. *Kelly,* 40 N. Y. 556; *Sperry* v. *Union Railway Co.,* 129 App. Div. 594; *Braxton* v. *Mendelson,* 233 N. Y. 122; *Brady et al.* v. *Cassidy et al.,* 104 N. Y. 147.)   VII. The charge of manipulation of the defendant's corporate accounts to defeat the plaintiff is wholly unfounded.

LEWIS, J. In 1905 the defendant made available to certain classes of its permanent employees a plan for pensioned retirement. That plan was subject to specific limitations, including the following: " 17. No pension or gratuity shall be paid except out of the *profits* of the Company and no pension or gratuity or claim thereto *shall be a charge upon or against or payable out of any of the capital assets of the Company.*" (Italics supplied.) Our present problem involves chiefly the interpretation of the word " profits " as used in the provision quoted above.

In accord with the provisions of the 1905 pension plan the plaintiff received regularly from the defendant a monthly pension from the date of his retirement in 1932 until April 30, 1941. On May 1, 1941, pension payments were terminated by the defendant upon the asserted ground that no profits had been realized from the Company's operations for the preceding year 1940. Instead a substantial capital deficit had resulted. In a written communication delivered to the plaintiff prior to May 1, 1941, the defendant had called to his attention the provisions of paragraph " 17 " of the pension plan and had advised him that — " no payments are due to be made with respect to pensions under the terms of the 1905 Plan " for the month of May, 1941. At the trial in Municipal Court of the City of New York a jury awarded a verdict in favor of the defendant. The judgment entered upon that verdict was reviewed and affirmed by the Appellate Term, first department, after which the judgment entered upon the order of the latter court was affirmed at the Appellate Division, two Justices dissenting. The case comes to us by permission of the Appellate Division.

Two issues were submitted to the jury — (1) whether on May 1, 1941, when the defendant declined to pay to plaintiff a monthly pension, there were *profits* from which the payment claimed by the plaintiff to be due on that date should have been paid; (2) whether the item appearing on the defendant's books under the caption " Reserve for Pensions and Benefits " represented a segregated fund from which the pension was payable. Those issues were in essence questions of law for decision by the court. We think, however, that any error in such submission was inconsequential because, in our opinion,

the jury's finding in favor of the defendant upon each of the two questions submitted should in any event have been directed by the court as matter of law. "The construction of a plain contract is for the court. The intention of the parties is found in the language used to express such intention. (*Hartigan* v. *Casualty Co.*, 227 N. Y. 175.) If the court finds as matter of law that the contract is unambiguous, evidence of the intention and acts of the parties plays no part in the decision of the case. Plain and unambiguous words, undisputed facts, leave no question of construction except for the court. The conduct of the parties may fix a meaning to words of doubtful import. It may not change the terms of the contract." (*Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125, 133.)

We regard as untenable the plaintiff's position that the word "profits" as used in the limitation set forth in paragraph "17" of the plan refers to net proceeds from defendant's operations arrived at by deducting current expenses from receipts of the enterprise during a given period, without including as an item of expense an allowance to cover depreciation of operating facilities which were capital assets. Such interpretation of the word "profits", we think, is not only opposed to sound business practice but it disregards the contextual limitation which is set forth in the same paragraph "17" of the plan — "* * * no pension * * * shall be a charge upon or against or payable out of any of the capital assets of the Company."

"Capital assets" as that phrase is used in the provision last quoted above include cables and those other facilities by means of which the defendant's business is conducted and which represent an expenditure of invested capital made at some time in the company's history. The usable value of depreciable facilities owned by the defendant and essential to its operations, suffers normally a constant depreciation from use and obsolescence, with a corresponding loss of invested capital. That normal process of depreciation works a constant devaluation of the defendant's "capital assets" which, if permitted to continue without restoration would ultimately exhaust the defendant's power to function. Meantime, if the books of the

defendant do not take into account the constant depreciation of the defendant's operating facilities — some of which have been in use for many years — those depreciated assets, as a matter of corporate bookkeeping, would be valued as new. If the defendant is to continue to perform the functions for which it was organized a reserve representing an honest estimate of depreciation of capital assets must be set up. Upon that subject this court has had occasion to say — " No corporation would be regarded as well conducted which did not make some provision for the necessity of ultimately replacing the property thus suffering deterioration ". (*People ex rel. Jamaica W. S. Co.* v. *Tax Comrs.*, 196 N. Y. 39, 57-58; see, also, *People ex rel. B. L., H. & P. Co.* v. *Stevens*, 203 N. Y. 7, 22, 23, 25; *Knoxville* v. *Water Co.*, 212 U. S. 1, 13-14.)

We read the several specific limitations set forth in paragraph " 17 " of the plan as we believe they would be understood by the average employee of the defendant. In the context in which it is found we construe the word " profits " as referring to net income derived from the defendant's operations over a given period and computed by including within items of expense properly to be deducted from current receipts, a fair allowance for depreciation of capital assets.

The record contains no evidence which supports the plaintiff's further contention that in May, 1941, when the payment of a pension to the plaintiff was discontinued, the item " Reserve for Pensions and Benefits " appearing on the defendant's books served as a basis for an obligation by the defendant to make the pension payment here in suit. The theory upon which this claim is made is that the pension reserve account constitutes a trust fund from which the plaintiff's pension was payable irrespective of whether the defendant's operations in 1940 and 1941 produced " profits." The item " Reserve for Pensions and Benefits " was created in 1906 by a book transaction which involved transferring to that account the balance in an account styled " Endowment Insurance Suspense " which had existed under an endowment insurance pension plan which antedated and differed from the pension plan of 1905. The balance of $54,573.74 in that former account at the time of the transfer

was composed chiefly of commissions received by the defendant on endowment policies issued on the lives of employees together with fines collected from employees for inaccurate messages and other minor offenses. Later, in 1922, when the " Reserve for Pensions and Benefits " had been depleted to a figure insufficient to meet pension payments for that year, the defendant arbitrarily transferred from surplus to the pension reserve account, $1,529,335.05. Thereafter in 1923 and 1924 similar transfers in the amount of $22,337 each were made. The evidence is undisputed, however, that these transactions involved no withdrawal from the defendant's general funds, no segregation of its funds or assets. The general funds, out of which pension payments were made, were not disturbed. In the absence of proof that the account " Reserve for Pensions and Benefits " represented a segregation of funds or assets separate from the defendant's general funds, thus creating a trust fund or *res* upon which a trust was impressed, no basis was established by the plaintiff for his claim that the pension reserve account constituted a trust fund from which his pension for 1941 was payable. (*McKee* v. *Paradise*, 299 U. S. 119, 123; *Brown* v. *Spohr*, 180 N. Y. 201, 209; *Greene* v. *Greene et al.*, 125 N. Y. 506, 510.)

There remains for consideration the plaintiff's assertion that the defendant is estopped from denying that its receipt and commingling with its own funds of various types of fines and the commissions on insurance policies issued to employees, constitutes a trust for its pensioners. An answer to that charge is found in the undisputed evidence that although, as we have seen, the defendant had accumulated in the " Endowment Insurance Suspense " account between 1893–1905 the sum of $54,573.74 and had received from 1906 to the date in May, 1941, when it refused to pay the plaintiff's pension the sum of $35,541.69 — a total of $90,115.43 — it paid out in pensions, benefits and gratuities under its pension plan from 1906 until May, 1941, the total sum of $2,738,425.83. It also appears that the plaintiff did not lose the benefit of insurance taken out by him under the defendant's endowment insurance pension plan which antedated the pension plan of 1905. When, in the course of administering that plan the policy issued to the plaintiff

by New York Life Insurance Company came due in 1920 in the sum of $1,252.72, he authorized the defendant to invest the proceeds in shares of The Mackay Companies to be held by the defendant until he should be pensioned or should die, at which time they were to be transferred to him or his estate. He also directed that a part of the shares so purchased corresponding to the defendant's total contribution to premiums on his endowment policy and to the share of profits earned by such endowment policy, with dividends and interest on dividends received on such shares, were to be taken into account in computing his pension, and the amount of his pension was to be abated to that extent. He directed that dividends on his shares were to be mailed directly to him and subsequently, when The Mackay Companies' shares were exchanged by the plaintiff for $1,600 of 5% bonds of Postal Telegraph and Cable Corporation, he acknowledged in writing that he had no further claim against the defendant in connection with that transaction.

The judgment should be affirmed, with costs.

LOUGHRAN, J. (dissenting). The parties are agreed that sums properly payable under this pension plan are debts of the defendant and not mere donations. One of the terms of the defendant's obligation is this: " No pension or gratuity shall be paid except out of the profits of the Company and no pension or gratuity or claim thereto shall be a charge upon or against or payable out of any of the capital assets of the Company."

At the times in issue, the defendant carried on its balance sheet an entry of $19,591,678.45 under the heading " Reserve for Depreciation." The opinion of the court is that this item must be given effect in arriving at the amount of the " profits " in question. Such a construction, in our judgment, is not the true one.

The words of the defendant's plan must be understood in their popular and ordinary sense, because common usage is the best judge of speech and the average man speaks quite simply. Moreover, these words are now to be read as they would have been so understood when the plan was set up in 1905 — long before income taxes had accentuated a scientific practice of allocating some portion of revenue to the renewal

of assets. We cannot accept the presumption that the average employee of the defendant saw in this plan the technical " depreciation " procedures of the tax-assessment and rate-making cases. that are now cited against him. On the contrary, as we must suppose, he looked at the plan as a thing that was meant to urge him to work steadily, by holding out to him some hope of freedom from want in the not unlikely event of a wearing-out of his own vigor through his day by day part in the defendant's business. (See *Roddy* v. *Valentine,* 268 N. Y. 228, 232.)

These considerations lead us to the conclusion that the word " profits " should in this instance be taken to signify the receipts of the enterprise less current expenses, i. e., net receipts — a construction that seems to us to be likewise quite in step with the popular and ordinary sense of the complementary provision against payment of a pension out of any " capital " asset. (See *The People* v. *The Supervisors of Niagara,* 4 Hill 20; *Paine* v. *Howells,* 90 N. Y. 660; *Miller* v. *Car Trust Investment Co.,* 120 App. Div. 442, 193 N. Y. 617; *Eyster* v. *Centennial Board of Finance,* 94 U. S. 500.)

A " Reserve for Pensions and Benefits " which the defendant carried on its books included fines collected by it from its employees and rebates on insurance premiums that were paid in part by them. Whether under these circumstances this entry was in some degree a warranty to the employees or worked an appreciable estoppel in their favor is a question that need not now be determined, if we are right in what we said above.

We vote to reverse the judgments and to grant a new trial, with costs in all courts to abide the event.

LEHMAN, Ch. J., CONWAY and THACHER, JJ., concur with LEWIS, J.; LOUGHRAN, J., dissents in opinion, in which RIPPEY and DESMOND, JJ., concur.

Judgment affirmed. (See 293 N. Y. 755.)