Peter A. Quinn, J.
Plaintiffs move for judgment on the pleadings pursuant to rule 112 of the Buies of Civil Practice, or in the alternative for summary judgment pursuant to rule 113; defendant cross-moves for like relief.
Plaintiffs were employees of the defendant, or of predecessor companies of which it is the reorganized successor, and retired at different times from January 1,1947 to April 14, 1955. They each claim benefits under the voluntary, noncontributory pension plan adopted by defendant’s predecessor and promulgated to its employees on August 27,1946. Subsequent to the retirement of all the plaintiffs, the defendant in concert with its parent company and cosubsidiaries adopted a pension plan for its employees dated January 1, 1960, funded through contributions made by the company (under a collateral trust agreement) to the Bankers Trust Company as trustee.
Most of the physical assets owned by the defendant including nearly all of the real and personal property necessary or incident to the operation of its street surface transit system were taken by the City of New York by right of eminent domain on March *993 21, 1962. Since that date defendant has not engaged in the operation of any transit facilities. It is not, however, a defunct corporation.
Benefits under the August 27,1946 plan were paid continuously to plaintiffs until February of this year when they were notified by defendants that no further payments would be made to them. Since January, 1960, plaintiffs, without demur, have been accepting checks of the Bankers Trust Company, as trustee, in payment of their pension benefits.
The pension plan of August 27,1946, which was dangled before plaintiffs during the time of their employment was simple and uncomplicated. By it, plaintiffs received the promise of their employer that if they continued employment (presumably faithful and satisfactory employment) until the completion of at least 25 years of service and reached the age of 65, they would each thereupon receive during the balance of their respective lives a sum of money payable in monthly installments computed on the basis of a percentage of the average salary for the final five years of employment and the number of years of service. Each plaintiff performed the acts and completed the service stipulated in the unrevoked, unmodified promise of their employer and under the modern view thereupon consummated a unilateral contract which vested in each an indefeasible right to the promised benefits. (Bromberg v. United Cigar-Whelan Stores Corp., N. Y. L. J., Feb. 26, 1951, p. 687, col. 2; 56 C. J. S., Master and Servant, § 169; David v. Veitscher, 348 Pa. 335 quoting Retirement Bd. v. McGovern, 316 Pa. 161; 75 Harv. L. Rev. 1532, 1538.) See, also, Kristt v. Whelan (4 A D 2d 195, 198) noting with approval as apparently meaningful dictum, the language of Gearns v. Commercial Cable Co. (177 Misc. 1047, 1048). McNevin v. Solvay Process Co. (32 App. Div. 610, affd. 167 N. Y. 530) and McCabe v. Consolidated Edison Co. (30 N. Y. S. 2d 445) are readily distinguishable in that the plaintiff employee in each of those cases had only an inchoate gift at the time of his severance from employment, because he had not completed the service or performed the acts stipulated in the promise of the defendant as conditions precedent to vesting of the right to receive pension benefits.
Gearns v. Commercial Cable Co. (266 App. Div. 315, affd. 293 N. Y. 105) turned on the express written proviso in the voluntary pension plan promulgated by the employer that benefits were payable solely out of profits and not out of capital assets. No such express limitation is to be found here; nor is one to be implied from the written provisions of the plan. The contention that it was in the contemplation of both parties at the time *994 of the promulgation of the pension plan of August 27, 1946, that pension benefits would be paid only out of operating profits is a wholly gratuitous and wishful inference; it finds no demonstrable factual support in any of the papers submitted on this motion sufficient to raise even the shadowy semblance of an issue.
Under a plan of reorganization, approved by orders of the United States District Court for the Southern District of New York, the defendant assumed certain obligations of the predecessor companies among which were those arising out of the pension plan of August 27, 1946. .When the trustee in that reorganization proceeding, in the beginning of this year brought on an application in the United States District Court for the Southern District of New York for leave to disavow the obligation arising out of the pension plan of August 27, 1946, the court declined to exercise the power, reserved in its order of October 8, 1956 (confirming the joint plan of reorganization) £ ‘ to reject * * * upon application by the trustee the Pension Plan adopted * * * on August 27, 1946 ’ ’ saying ££ [t] o hold that, after six years of activity by the reorganized companies as ordinary private corporations, the Trustee could assist them to take advantage of the opportunity created by their retirement from the transportation business would be indeed to hold that the court had been able £ through the devise of retaining jurisdiction ’ to £ keep the debtor in tutelage ’. ’ ’ The obligations of the defendant under the pension plan of August 27, 1946 have thus been judicially recognized as still subsisting.
Plaintiffs’ mere acceptance of checks of Bankers Trust Co., as trustee, in payment of the pension benefits due them under the pension plan of August 27, 1946 is not in itself .sufficient to constitute a waiver of their rights under the plan nor a novation by ratification and acceptance of the new plan of January 1,1960 in substitution for the earlier plan. Something more than acceptance of moneys due, though from an agent clothed with trustee identification under a new and different arrangement with others somewhat similarly situated, must be spelled out before the conduct of plaintiffs or their omission to inquire or object can be construed as indicative of an intention to abandon already vested contract rights and to range themselves with others, less protected and junior in rights, under the new and different arrangement.
The defendant’s argument that it is relieved from liability to the plaintiffs because the taking, in condemnation proceedings, by the City of New York put it permanently out of business and rendered performance impossible, overlooks the fact that the *995 defendant by law is bound to receive full and fair compensation for all its properties and assets which the city has taken, together with such cognizable consequential damages to the continuance of its business operations, including loss of revenues or profits and liability for fixed obligations, as it may be possible to show flowed from the taking. This is no mere ophemeron of legal hope or fiction. Faith in it as eventual reality has been demonstrated by the usually hard-headed business community; of which the court cannot help but remark in taking judicial notice of the fact that although the stock of the Fifth Avenue Coach Company, of which the defendant is a wholly owned subsidiary, was quoted at $16 per share on the New York Stock Exchange on the date title to the condemned properties vested in the City of New York, its stock is currently quoted at 29%.
Plaintiffs’ alternative motion for summary judgment is granted and defendant’s motions denied.