(32 App. Div. 610.)

## McNEVIN v. SOLVAY PROCESS CO.

(Supreme Court, Appellate Division, Fourth Department. July 26, 1898.)

MASTER AND SERVANT—PENSION FUND—RIGHT TO PARTICIPATE.

An employer voluntarily established a fund for the support of its employés when disabled from certain causes, and by a set of rules provided that it was a gift, and remained the employer's property, and under its absolute control, until actually paid over; that there was no obligation to pay any portion of its earnings into the fund, and on dismissal the amount credited to the dismissed employé should be paid to him, but the employer might retain it for a certain period, and pay him the income therefrom; that an employé could not demand payment of his share except when it was adjudged payable by the employer's trustees, whose decision was final. *Held*, that a discharged employé had no right to the portion of the fund credited to him, where the trustees had determined he was not entitled to payment thereof.

Green and Ward, JJ., dissenting.

Appeal from Onondaga county court.

Action by James McNevin against the Solvay Process Company. There was a judgment for plaintiff, and defendant appeals from the judgment and from an order denying a motion for a new trial. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

William G. Tracy, for appellant.

P. J. Ryan, for respondent.

FOLLETT, J. This action was begun May 14, 1897, to recover $52.54, alleged to be due from the defendant to the plaintiff as his share of a pension fund established by the defendant for the benefit of a class of its employés. The defendant is a domestic corporation engaged in manufacturing at the city of Syracuse, N. Y., and employs in its business between 2,000 and 3,000 persons. The plaintiff entered the service of the defendant June 18, 1890, and continued therein until April 6, 1895, when he was discharged. January 1, 1892, the defendant established what is known as a "pension fund" for the benefit of a class of its employés, and at the same time established a set of rules and regulations providing how the fund should be established, for whose benefit, how administered, and how applied for the benefit of the employés entitled to participate therein. The employés are paid stipulated wages, and no part of the fund is derived from their wages, or contributed to by them, but it is voluntarily created by the defendant setting apart a portion of its profits belonging to its shareholders, which, through the action of the corporation, are voluntarily relinquished for the benefit of its employés, pursuant to the scheme set forth in the printed rules and regulations. In the first article of the rules and regulations it is stated that "the object of these funds is to provide a means of support when by reason of accident, sickness, or advanced age labor must cease." By the second article it is provided that the funds shall be and remain the sole property of the defendant, and absolutely subject to the control of its trustees, and that in no case can an employé demand payment

of the sum credited to his account, except when the defendant shall adjudge the account to be payable, in whole or in part, in accordance with the rules and regulations established. By the third article the sums set apart are expressly declared to be gifts, and that the sums allotted to the employés remain the property of the defendant until they are actually paid over to the employés. And by the fourth article it is provided that the fund is to remain under the sole control of the defendant's trustees, who are authorized to decide all questions concerning the rights of employés in the fund without appeal. By the fifth article it is provided that the trustees shall be under no obligation to set apart, during any year, any portion of its earnings as part of the pension fund, unless it shall be found that the profits of the year are sufficient to enable it to do so after discharging the obligations of the defendant, including dividends to its shareholders. There is no limit as to the amount of dividends which may be declared to shareholders. By the ninth article it is provided that final payment of an account of an employé shall be made in case he has retired from actual service after attaining the age of 55 years, or after attaining the age of 50 years, having served the defendant 20 years, or after 25 years' service without condition as to age. It is also provided that in case an employé is discharged without a cause of dissatisfaction, and especially if on account of the necessity of diminishing the number of employés, the amount credited to such employé shall be paid according to the rules and regulations established. By the same article it is provided that the defendant, instead of paying over the amount in cash, may purchase an annuity for the benefit of the employé. By the eleventh article it is provided that in case an employé leaves defendant's service for any cause, including dismissal, the trustee may keep back the whole or part of his account for a period not exceeding five years, on condition of paying him the income upon the sum, the sum to remain as security for the performance by the employé of his engagement not to injure the defendant after leaving its service by disclosing its processes. By the twelfth article it is provided that, in case an employé dies in the service of the defendant, the sum standing to his credit shall be paid to his widow, children, family, or personal representative, as may be determined by the defendant's trustees.

It is conceded that this pension fund has been created voluntarily, and is a gift by the defendant, and the question upon which this case turns is whether, when a sum is credited to an employé on the pass book furnished by the defendant, the employé has a vested right in the sum so credited, or whether, under the terms by which the fund is established, the employé acquires no vested right until the gift is completed by actual payment to the employé. It must be conceded at the outset that a person or a corporation proposing to give a sum for the benefit of any person or any set of persons has the right to fix the terms of his bounty, and provide under what circumstances the gift shall become vested and absolute. Under the regulations established, it seems to me that none of the employés have a vested interest in any part of this fund, even though credited upon their pass books until the gift is completed by actual payment. Until that time it is

an inchoate gift. The articles provide that an employé cannot, in any case, demand payment of the sum credited to his account, except when the defendant shall adjudge the account to be payable, in whole or in part, according to the rules and regulations established; and it is also provided that the sums credited shall remain the property of the defendant until actually paid, and that the fund shall be and remain under the sole control of the defendant's trustees, who are authorized to decide all questions concerning it without appeal. In this case the defendant's trustees decided, after a hearing of the plaintiff, that the plaintiff was not, when the action was begun, entitled to payment of any portion of the fund credited to him, and it seems to me that under the terms of the gift this decision is final, unless, within the discretion of the defendant's trustees, it shall be modified in the future. In case it shall be held that this plaintiff had a vested right in the fund credited to his account, it would necessarily follow that it might be reached by his creditors through proceedings supplementary to execution, and thus the very object of creating the fund would be destroyed. If it be held that this plaintiff had a vested right in this fund when he ceased to be employed by the defendant, it would follow that every other employé who had left the service of the defendant from any cause would have a vested right in this fund, which might be appropriated by his creditors. It seems to me that the scheme by which this fund is created is simply a promise on the part of the defendant to give to its employés a certain sum in the future, with an absolute reservation that it may at any time determine not to complete the gift, and, if it does so determine, an employé has no right of action to recover the sum standing to his credit on the books of the pension fund. Whether the disposition and management of this fund may or may not be the subject of control in an equity action, in case it should be alleged and proved that the defendant's trustees were squandering the fund, or were guilty of bad faith in its management, is a question not before the court, this being a simple legal action to recover the sum standing to the plaintiff's credit on the theory that when he left the employment of the defendant he acquired an absolute vested right in the sum credited, which he has the right to recover.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except GREEN and WARD, JJ., dissenting.

GREEN, J. (dissenting). This action was brought by a former employé of the defendant to recover a sum of money claimed to be due him by virtue of an alleged contract consisting of certain regulations established by the defendant, creating a pension fund for the benefit of employés who have continued in its service for the period of two years, and which fund was created solely from the dividends of the company. These regulations were signed by the parties, and contained certain promises on the part of the defendant, and the agreement of the plaintiff to faithfully perform his work, and not to use any knowledge acquired by him of the defendant's business and processes to its injury or disadvantage while so em-

ployed and after he should leave its service. The obligation of the defendant to pay depends upon the meaning and legal effect that may be given to the provisions of the regulations. Article 1 provides that the funds shall be set aside out of profits, and all employés may be admitted as participants therein after two years' faithful service, during which time they shall have maintained a reputation for sobriety, industry, and good moral character. Article 2 declares that the funds are voluntarily set aside by the company, are its sole property, and absolutely subject to the control of the trustees. "In no case can the employés demand payment of the sums carried to their several accounts, except as and when the company shall have adjudged the accounts to be payable, in whole or in part, in accordance with the rules," etc., "hereby established." By article 3 the sums to be paid "are expressly declared to be gifts, and are not transferable, and are the property of the company until actual payment be made." By article 4 the trustees "are authorized to decide all questions concerning the funds without appeal." By article 6 the allotments shall be placed to the credit of each employé on an account opened with him for this purpose. Article 7 provides for investment of the pension fund. By article 8 a pass book shall be given to each employé, in which shall be written the allotments and income which have been placed to his credit. The regulations shall be printed in the pass book, and shall be signed and agreed to by each employé as a condition of enjoying the benefits of the fund. Article 9: "Final payment of the account of an employé shall be made under the following conditions: (1) If he is retired from active service by the company, or if he asks to be retired. (2) If he is discharged without any cause of dissatisfaction, and especially if on account of diminishing the number of employés. (3) If, in the opinion of the company's physician, he has become permanently incapacitated to perform his duties, by reason of sickness, injuries, or infirmities." By article 10, when an employé leaves the company's service in any manner different from either of the ways specified in article 9, the capital he has in the pension fund shall remain at the disposal of the trustees, who may decide, according to the circumstances, that they will not pay off his allotments, or pay off the whole or part of his allotment, in their discretion. All sums withheld shall be placed in the "additional fund." An employé has a right to be heard by the trustees before a decision is taken concerning his allotments. Article 13 provides for an "additional fund." Article 14 provides that in no case whatever, and under no pretext, shall any sum be taken out of the pension fund, except in payment of the allotments made to employés, or in payment of transfers to the additional fund. Article 16 declares that the company shall have power to discontinue the pension fund, but in such case the sums previously deposited, including the additional fund, shall be shared between the participants in proportion to the amount each one has been credited for, but subject to restrictions and regulations hereinbefore set forth. The plaintiff subscribed his name to the regulations, and promised to faithfully perform his work with a true loyalty to the interests of the company, and that during his term of

service and after leaving the defendant's employment he would not use his knowledge of the company's business or processes to its injury or disadvantage.

It appears that a portion of the pension fund stands on the defendant's books credited to that fund, and that that portion which is invested stands in the name of the company as a special deposit. The trustees of the company are the trustees of the fund, and the secretary of the company is also the secretary of the trustees of the fund. Plaintiff entered defendant's service in June, 1890, being employed by the day, and subject to discharge at the pleasure of his employer. After the expiration of three years he was given a pass book, as provided in article 8, in which he was credited with various sums, amounting to $52.54, as allotments made to him from the pension fund, and the same sums were credited to him on the books of the company. In April, 1895, the plaintiff was dismissed from the service of the defendant by its foreman without any explanation being given for the reason of his dismissal, or any cause of dissatisfaction expressed. Afterwards he appeared before the trustees of the fund, and made application for payment of the amount allotted to him on his pass book, "and I stated my views of the case to the trustees as I understood it." He was subsequently notified that the trustees had voted that they would not pay off his allotment in accordance with article 10 of the regulations. It does not appear whether the plaintiff was confronted by the foreman at the hearing aforesaid, or that the latter made any statement at such hearing in respect of the cause or reason of the dissatisfaction entertained. The defendant, in its answer, alleged that he was discharged "for failing to perform in a satisfactory manner the duties required of him," but no evidence was given to substantiate this allegation by the testimony of the foreman or any other person. In the minutes of the trustees' meeting it was stated that plaintiff was discharged "for shirking," but the truth of this declaration was not supported by any evidence.

The court properly refused to admit the minutes as evidence of the existence of the cause of plaintiff's discharge. When a party has made a prima facie case against another, and the defendant has possession or control of evidence, and peculiar means of repelling the proof or explaining it, we ought to accept the fact as satisfactorily established. When a party knows the truth, and omits to speak, any inference warranted by the evidence should be indulged against him. The onus was fairly cast upon the defendant to show the real truth of the matter, or take the consequences which the law infers from the omission to testify, and the adverse presumptions that may be raised against it. McGuire v. Insurance Co., 7 App. Div. 590, 40 N. Y. Supp. 300, and cases there cited.

The court refused a motion for nonsuit, and charged the jury, in substance, that the plaintiff was entitled to recover, unless they found that he had violated the provisions of article 9, and so negligently performed his services that there existed reasonable cause for dissatisfaction therewith, and reasonable ground for his discharge on account thereof. Exceptions were duly taken by the defendant. The defendant's contention is that an adjudication by the

trustees that the plaintiff is entitled to receive the sums allotted to him forms a condition precedent to any recovery, and, the decision having been adverse to him, this action cannot be maintained; that the determination of the trustees that the plaintiff is not entitled to payment of his allotments is final and conclusive upon him, and cannot be reviewed in this action. In other words, that the trustees are the sole and exclusive judges of the existence and the sufficiency of the cause of dissatisfaction. Indeed, the argument amounts to this: that the plaintiff has conferred upon the trustees an arbitrary power to determine that they are dissatisfied with his services, and to forfeit his rights and interest created by the contract, without assigning any cause whatsoever. In the first place, it should be remarked that the provision in article 3 that the sums to be paid are to be deemed gifts, and not transferable, cannot alter or impair the true character of the instrument or its legal effect and operation. A promise, founded upon a valuable consideration inuring to the benefit of a promisor, to pay a sum of money upon specified contingencies, is not a promise to make a gift, even though the parties call it so. To have that effect the agreement must annul the obligation to fulfill the promise, and leave it optional with the promisor. There is no such stipulation in this instrument, and the counsel for the defendant admits what cannot be denied—that it constitutes a contract founded upon a valuable consideration. This fund is not a gift, nor is it conceded to be such. On the contrary, the defendant's counsel, in his brief, admits that a contract exists between these parties. It is conceded, it is true, that the intent at the outset was a beneficial one, and that defendant had a right to terminate the contract under certain conditions; but nowhere is the defendant given absolutely the right to rescind the contract. If the plaintiff is discharged for just cause, then he would not be entitled to the money; but, if the defendant should rescind the contract without just cause, the plaintiff would then have a vested right in the moneys to his credit. It is not necessary to determine whether he had a vested interest in that money before that time; but when that time came, and when the defendant rescinded the contract without just cause, and that has been fully determined, then the right of the plaintiff to those moneys became vested. And therefore, in ascertaining the rights of the respective parties from the terms in which their understanding is expressed, we must start with the proposition that the plaintiff acquired, by virtue of the agreement, a vested legal interest in the pension fund, or a legal right to compel the defendant to fulfill its obligations; and the question is whether the plaintiff has incurred a forfeiture of such right or interest by reason of the nonperformance or misperformance of an essential obligation imposed upon him by the contract. In the determination of this question it is all important to observe the general principle that in the construction of all contracts under which forfeitures are claimed it is the duty of the court to interpret them strictly, in order to avoid such a result, for a forfeiture is not favored in the law. Lyon v. Hersey, 103 N. Y. 264, 270, 8 N. E. 518. And though it may have been competent for the employés of the defendant to so contract that their rights

in the pension fund shall depend upon the determination of a tribunal of their own choice, and to make the decision final and conclusive, yet, when one of the parties or its representatives are sought to be made the final judge, the courts will not give such a construction to the contract as to have that effect, if it be possible to give any other. Association v. Robinson, 147 Ill. 138, 35 N. E. 168. It was accordingly held in that case that a provision giving the directors the power to determine all points of dispute and questions of doubt that may arise, and declaring that their decision shall be final, should not be construed to apply to a clause in the same section relating to the presentment of claims to the board for approval; and that, therefore, no power was given to determine conclusively the rights of a beneficiary. The court limited the provision to another clause in the section.

Defendant contends that the provision in article 2, that in no case can the employés demand payment of the sums credited to their account except when the company shall adjudge the same to be payable, must be construed as a condition precedent to the right of recovery, and therefore, as a logical consequence, the trustees are vested with an arbitrary discretion in determining whether any cause of dissatisfaction existed, and the legal sufficiency of such cause. In other words, it is sufficient to say that they feel dissatisfied, and their utterance shall be final and conclusive, although there is no such stipulation contained in the contract. In answer to this it should be observed that such adjudication must be "in accordance with the rules and regulations hereby established"; that is to say, there must be cause for the dissatisfaction to justify a discharge under article 9, but there is no provision in that or in any other article that the trustees shall be the sole, final, and exclusive judges of the cause, or that a particular act or omission on the part of the employé constituted a breach of the contract "to faithfully perform the work entrusted to me with a true loyalty to the interests of the company." In short, the plaintiff has not, in express terms, nor by necessary implication, constituted the trustees as a tribunal to determine, absolutely and without appeal to the courts, that he has committed a breach of the contract warranting his discharge, and a forfeiture of all rights conferred by it. There is no stipulation that the defendant may relieve itself of its obligation simply by a statement that the plaintiff has failed to perform his. The language of the instrument does not confer upon the defendant an arbitrary power to declare itself dissatisfied, and thereupon to terminate the contract and declare the forfeiture.

Defendant further contends that the authority conferred upon the trustees to decide all questions concerning the funds without appeal (article 4) renders their determination final and conclusive, and precludes an appeal to judicial tribunals for redress; that this is equivalent to an express agreement that such adjudication shall be a finality upon the question whether there existed any adequate cause for dissatisfaction, authorizing a declaration of forfeiture of the employé's rights and interests under the contract. The answer to this argument is that the courts will not give such a construction

to the contract as to have that effect, if any other construction may reasonably and properly be adopted. Now, it is obvious there are many questions that may arise concerning the funds and their application to which the provision of article 4 may properly be applied, and therefore that article does not necessarily require that it should be construed as an agreement to make the company the final arbiter upon the question whether the employé has been guilty of a breach of contract. For instance, the trustees may decide that only a portion of the allotment made shall be placed to an employé's credit, whenever they judge it necessary as a matter of discipline (article 6); they may purchase an annuity for an employé permanently disabled, in their discretion (article 9); they may retain for a period the moneys due a retiring employé, or one discharged without cause, as security for the agreement not to injure the company after leaving its service (article 11); they shall decide the proportion to be paid to the widow and children of a deceased employé (article 12); they may decide other questions in respect of the additional fund, and so forth. We are therefore of the opinion that the plaintiff has not agreed that the trustees shall be the sole and exclusive arbitrators of his rights under the contract.

Defendant lays stress upon the fact that the company itself will gain nothing by a decision in its favor, since the amount withheld from the plaintiff must be transferred to the additional fund, thereby increasing the amount of that fund to be distributed among the widows and children or relatives of deserving employés; that the regulations provide that the moneys once alloted to the employés shall never be appropriated by the defendant to its own use, and all power of disposition over them is lost, except to pay them over to the beneficiaries or to the additional fund; that it is not an agreement that the defendant's trustees shall retain the funds if they decide that the plaintiff is not entitled to them, but that they shall pay over the same to other participants, who may assert the enforcement of this obligation. That is true, but we are unable to perceive that it has any pertinent bearing upon the construction of the contract and its legal effect. The agreement was that, if the plaintiff should be discharged for cause of dissatisfaction, his account should be transferred to the additional fund for the benefit of deserving participants therein; otherwise it must be paid to him. It should be observed, by the way, that the employés have no security or protection against the application by the company of all the funds to the uses and purposes of its business; so that, in case of insolvency, a large part of the funds may be lost to them. The conclusion from the foregoing is that the plaintiff's right of recovery must depend upon the legal effect and operation to be given to article 9, independent of and uncontrolled by the other articles referred to.

In the absence of any adequate proof of the cause of discharge, or cause of dissatisfaction, it must be held that there is no proof that the plaintiff has violated his agreement by the commission of some act that he ought not to have done, or that he omitted to do something required of him, that justified a dismissal. In Gray

v. Shepard, 147 N. Y. 181, 41 N. E. 500, it was held that, whether there existed "incompatibility," within the meaning of the contract, was a question for the jury upon the evidence; that the employer could not allege incompatibility as a pretense for discharging the plaintiff, but it must exist in fact, to justify the discharge. Here the plaintiff has earned the moneys placed to his account, and it was incumbent upon the defendant to show some just cause or reason for depriving him of it. He is not claiming damages as for a breach of a purely executory contract, but is seeking to recover moneys due him upon a contract executed. The opinions of the court in other cases possessing generic characteristics have a pertinent application, and may be appropriately referred to in support of our conclusions in this matter. See Brand v. Godwin, 15 Daly; 456, 8 N. Y. Supp. 339, and 9 N. Y. Supp. 743; Crawford v. Publishing Co., 9 App. Div. 481, 41 N. Y. Supp. 325; Id., 22 App. Div. 54, 47 N. Y. Supp. 747; Hummel v. Stern, 21 App. Div. 544, 48 N. Y. Supp. 528; Id., 15 Misc. Rep. 27, 36 N. Y. Supp. 443; Smith v. Robson, 148 N. Y. 252, 42 N. E. 677. See, also, Seaver v. Morse, 20 Vt. 622.

It is an important observation to make that an adverse decision to the plaintiff in this case would justify the discharge of employés who may have loyally and faithfully performed their duties to the company for a long period of years simply upon a mere declaration that the company had cause for dissatisfaction, and the employé would be deprived of the moneys that he had fairly earned, without any remedy for their recovery in a court of justice. The cause was fairly and properly tried by the court below upon correct principles, and the judgment and order should be affirmed, with costs.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event.

WARD, J., concurs.