Luis Antonio Albizu, Plaintiff and Appellee, *v.* The Royal Bank of Canada, Defendant and Appellant.

No. 6114.  Argued June 8, 1933.—Decided April 11, 1934.

*A. S. Poventud* for appellant.  *F. B. Fornaris* and *M. León Parra* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

Luis Antonio Albizu, an employee of The Royal Bank of Canada from April 1, 1927, to May 15, 1930, at an annual salary of $4,000, by this action seeks to recover the sum of $493.33, claimed to have been improperly deducted from his salary. It is alleged in the complaint that the defendant corporation had established long before the plaintiff became its employee, and still maintains, a fund known as "Officers' Pension Fund" with regulations for its operation and administration, and which is supported by deductions at the rate of 4 per cent annually, which was, and still is, demanded from the salary paid by said corporation to each of its employees. During the time that he was employed, Mr. Albizu paid into the pension fund the said assessment of 4 per cent in accordance with the regulations, which the plaintiff accepted with full knowledge thereof.

It is further alleged that, according to the regulations, the object of the pension fund is to provide pensions for the officers and employees of the bank or for their widows and children, subject to the rules governing said fund, and it must be very clearly understood that the rules thereof do not confer upon any officer or employee, or vest in him, any right; that no contract, either express or implied, shall be understood to arise therefrom; and that each pension will be granted at the discretion of the "Officers' Pension Fund" and for such time as it may determine.

The defendant in its answer alleges, among other things, that constituted by the employees and officers of the defendant bank there existed prior to and on the dates mentioned in the complaint, and still exists, a cooperative association known as "Officers' Pension Fund" for the mutual protection of the officers and other employees of the said bank, with regulations for the operation and administration thereof, the funds of which are formed by a contribution or spontaneous and voluntary annual payment made by each member, of a

sum of money equal to 4 per cent of the amount he receives as annual salary; and that the plaintiff, Mr. Albizu, when entering upon his duties as manager of the defendant bank in Ponce, voluntarily became a member of said Officers' Pension Fund, knowing beforehand its operation and regulations.

The answer further specifically alleged that there was a nonjoinder of parties defendant, and set up as special defenses that the plaintiff was precluded from recovering the total of the amounts he voluntarily paid, and that between the same parties, for the same claim, and under facts identical with those of this action, there was filed in the Municipal Court of Ponce a complaint that was voluntarily dismissed by the plaintiff when the case was set for hearing, in a trial *de novo,* before the District Court for the Judicial District of Ponce.

The lower court held the retention of 4 per cent of the plaintiff's salary to be void as contrary to law, and adjudged the defendant corporation to pay to the plaintiff the total amount retained, to wit, $493.33, with costs and expenses, excluding attorney's fees.

The appellant corporation first urges that the lower court erred in not holding that there was a nonjoinder of parties defendant in the instant case.

It was alleged by the defendant:

". . . that among the officers and employees of said bank there is an association composed of said officers and employees, and known as 'Officers' Pension Fund'; an association which has powers by virtue of its own regulations and whose funds are managed and controlled by two trustees who hold the offices of president and general manager of the defendant corporation; that the plaintiff, in accordance with said regulations, which were and are known to him, voluntarily and without any protest whatever, paid, as a member of the pension fund, his annual dues amounting to 4 per cent of his annual compensation as manager or officer of said bank; that the plaintiff has not demanded payment from the pension fund nor has

he sued or made parties to this action either the said association or the president and the general manager of The Royal Bank of Canada as trustees of the association, who are the persons who, for the mutual benefit of the members of the said Officers' Pension Fund, receive and dispose of the money collected from its members.''

Based on those facts, the appellant corporation maintains that there exists a nonjoinder of parties defendant, indispensable for the decision of this case.

We have carefully examined the regulations governing this pension fund of The Royal Bank of Canada and believe that this is not the case of an independent association but of a fund which is paid to two trustees—the president of the bank and its manager—who are subject to the orders and under the authority of the bank through its board of directors, which is the supreme authority, as appears from sections 4, 5, 10, 13, 14, 16, 17, 20, 21, 22, 23, and 25 of the regulations. The plaintiff produced documentary evidence showing that in the office of the Executive Secretary of Puerto Rico there is no corporation or association registered with the name of ''Officers' Pension Fund of The Royal Bank of Canada'' or ''Officers' Trust Fund of The Royal Bank of Canada.'' In our opinion, there is no defect of parties, as claimed by the appellant corporation. This pension fund is nothing more than a dependency under the control of the bank, which is the party really interested.

The second error assigned is based on the refusal of the lower court to apply to the instant case the doctrine of *retraxit*. The appellant corporation in its brief says that the plaintiff, on or about October 29, 1931, filed in the Municipal Court of Ponce a case identical with the case at bar, and that that case was discontinued in the district court, on appeal, the dismissal thereof having been ordered as a matter definitely ended. The judgment of dismissal was offered in evidence, but in regard to the questions involved no evidence whatever was presented. Said judgment shows that an action of debt

was previously begun between the same parties, but nothing more. The information we have regarding the former action is furnished by the plaintiff himself, who, in stating his case briefly upon being questioned by the judge, acknowledged that a similar action was instituted under the wage law of 1919 (Act No. 91 of 1917, (3) p. 10), which was declared void by the Federal Circuit Court at Boston. In view of the decision of the Circuit Court, the plaintiff moved for a dismissal, reserving the right to institute another action in consonance with the claims set forth in his complaint. The appellant corporation believes that a final decision was involved which precluded the party from again instituting the action, attributing to said decision the character of *res judicata*. It is evident that the former case was not decided on its merits. The plaintiff, in view of the fact that the law on which he based his action had been declared void, and believing, as he explains in his brief, that he could not change the theory of his case, moved to dismiss it, reserving to himself the right to bring any action in consonance with the claims advanced in his complaint. The fact that the court ordered the dismissal and filing away of the case as a matter definitely ended cannot deprive the plaintiff of the right to institute a new action. The case which the defendant had moved to dismiss was adjudged to be definitely ended, but not with respect to any right that the latter might have to demand, in a subsequent action, recovery of the sum claimed by him.

The doctrine of *retraxit* had its origin in common law, and there is no reason whatever for applying it in Puerto Rico, especially as some courts have declared it obsolete and unknown to modern practice. This court, in the case of *Merino* v. *City of N.Y. Fire Ins. Co.,* 35 P.R.R. 414, studied the question and expressly stated that it did so without holding that the rule was applicable to Puerto Rico. In that decision the case of *Merritt* v. *Campbell,* 47 Cal. 542, was cited. We transcribe below what the California court itself

says in the case of *Pyle* v. *Pierce,* 55 Pac. 141, wherein that of *Merritt* v. *Campbell, supra,* is distinguished and practically overruled:

"Defendant pleaded a judgment in bar, based upon the following facts: Plaintiff filed her complaint, and defendant answered. The time arrived for trial, and the plaintiff's attorney failed to appear. Thereupon defendant answered 'Ready,' and made a motion that the action be dismissed by reason of nonappearance of plaintiff. At this stage of the proceeding, plaintiff's attorney appeared, and declined to further prosecute the action. The court thereupon ordered the action dismissed for want of prosecution, and gave judgment in favor of defendant for his costs. Thereafter a new complaint was filed upon the same cause of action, and defendant, by his answer, pleaded this aforesaid judgment in bar to the prosecution of the present action. Section 581 of the Code of Civil Procedure declares that an action may be dismissed or a judgment of nonsuit entered in the following cases: '(3) By the court when the plaintiff fails to appear on the trial, and the defendant appears and asks for the dismissal.' The succeeding section declares: 'In every case other than those mentioned in the last section judgment must be rendered on the merits.' In this case it may be fairly said that the plaintiff failed to appear at the time the case was called for trial, and under the authority of this section the court was justified in dismissing the action. We are not inclined to extend the doctrine of re-traxit as recognized in the case of *Merritt* v. *Campbell,* 47 Cal. 543, and that case is essentially different in its facts from the case at bar. When there has been no adjudication of the cause upon its merits, it will only be in exceptional cases that this court will hold that a judgment of dismissal is the equivalent of a judgment of res adjudicata upon the facts. Upon reason, there is nothing to justify such a rule. Nothing has been litigated, and no principle of estoppel can be invoked. If plaintiff had proceeded with the trial until nonsuited upon the weakness of her evidence, such judgment of nonsuit would not have been a bar to the commencement of the present action. How much less reason to declare a bar under existing circumstances! We find no direct authorities in this state upon the question, but in the case of *Laird* v. *Morris* (Nev.) 42 Pac. 11, the matter is directly presented under a similar statute, and after careful consideration it was held that such a judgment was not a bar."

A *retraxit* is an open and voluntary renunciation, made in a formal and definite manner, in open court, by the plaintiff directly and not by his attorney, unless the latter has been expressly authorized to make it by the plaintiff personally. In the case of *Walker* v. *St. Paul City Ry. Co.*, 53 N.W. 1068, the Supreme Court of Minnesota says that a *retraxit*, at common law, is "an open and voluntary renunciation by the plaintiff in open court of his suit or cause of action, and on the entry of judgment thereon by defendant the plaintiff's right of action was forever gone." The said court adds that this doctrine has been practically abandoned in England and was never recognized in the State of Minnesota or in its territory.

The instant case is not a case of *retraxit* but of voluntary dismissal requested by the plaintiff's attorneys, who, in his name, reserved the right to institute any action in consonance with the claims set forth in his complaint. It is evident that the dismissal ordered by the court did not constitute a decision on the merits of the case and, therefore, cannot be a bar to the bringing of a new action.

We believe that the court *a quo* committed no error in dismissing the defense set up by the defendant corporation.

The third, fourth, fifth, and sixth errors can and should be discussed jointly. The defendant corporation maintains that the plaintiff is barred from instituting the present action, and that the district court erred in failing to recognize that fact and in declaring section 25 of the regulations of the Officers' Pension Fund as contrary to law.

The plaintiff was an employee of The Royal Bank of Canada from 1914 to 1921, as appears from his own testimony. He resigned while he was manager of the bank. In 1927 he returned to occupy the same position, and on said date, as in 1914, he subscribed the following document:

"I the undersigned, an officer of The Royal Bank of Canada, in consideration of my employment with said bank, hereby agree and declare that I consent to and am bound by all the rules and regulations

of the said bank, and of the Officers' Pension Fund of said bank now in force, and all such other rules and regulations as may hereafter be made in relation thereto, and that I shall faithfully observe the same.''

There is no doubt whatever that the plaintiff accepted the regulations of the pension fund, knowing their meaning and contents. The plaintiff testified that he faced the alternative of signing or not signing, and that if he had not signed, he would have had to leave his position. He added that he knew the regulations, and that when each employee under twenty-one years of age reached his majority he had to submit to a medical examination in order to qualify for the pension fund, and if he did not pass this examination, he had to leave the bank. We have examined the regulations, and it is true that section 5 thereof provides that any employee not admitted to the pension fund at the age of twenty-one years shall be retired from the service of the bank unless this rule is specially waived by the board of directors of said bank. It is to be supposed that this rule, which is applied to minors when they reach their majority, is extensive also to persons applying for positions in the bank, when they are admitted as employees. This is the conclusion that arises from an interpretation of the letter and spirit of this regulation that obliges minors who, on reaching the age of twenty-one years, are not admitted to the fund, to leave the bank. However, it is not our purpose to discuss the question of whether Mr. Albizu's consent was voluntary or not. The evidence shows that he accepted the regulations of the pension fund and periodically paid the dues assigned to him.

Section 10 of the said regulations says that when any officer or employee retires from service, either voluntarily or by removal, without being entitled to a pension, he shall receive fifty per cent of the payments made to the fund, without interest, any amount that he may be owing to the bank being also deducted. The appellant corporation sent to the plaintiff a check for fifty per cent of the amount of his

contributions, pursuant to the provisions of the regulations. Feeling aggrieved by this deduction, the plaintiff claimed the total of the amounts he paid into the fund. Mr. Albizu in his brief says that the regulation that imposes the deductions is void, as is also the consent given. Section 1223 of the Civil Code, cited by the lower court, provides that the validity and fulfillment of contracts cannot be left to the will (*arbitrio*) of one of the contracting parties.

Section 25 of the said regulations reads as follows:

"(*a*) The Board of Directors shall have power to amend the rules governing the Fund at any time, and to make additional rules from time to time.

"(*b*) While it is intended that the administration of the Fund shall be in accordance with the general principles laid down in the rules governing the same in force at any time, it must be distinctly understood that these rules confer no legal or vested rights on any officer or employee, and that no contract, expressed or implied, shall be deemed to arise thereunder, or by reason of any expression used therein, or action taken thereunder, and that every pension will be granted at the discretion of the Board of Directors, and continued only so long as they think proper."

The fund created by the bank has no other purpose than the granting of pensions. This is the sole object sought. The employees and officers who pay their dues, either voluntarily or under compulsion, have a right to expect that the payment thereof will give rise to some obligation on the part of the institution receiving such payment. However, they have signed a document whereby the board of directors reserves to itself the power to grant or to refuse pensions at will, and which sets forth that the acceptance of this rule creates no legal bond whatever of a contractual nature, nor does it confer a vested right on the officers or employees. This is equivalent to leaving the performance of what is agreed upon in the regulations to the discretion of the board of directors. The officers and employees of the bank are really at the mercy of the board. A manifest inequality of position is noted between the parties. The provisions of the

regulations, according to section 3 thereof, are binding on all the officers and employees of the bank who are admitted to the fund. The officer or employee accepts everything: the existing regulations which he knows and also those which he does not know, since in the document subscribed by him he binds himself to accept the rules already adopted and those that may be adopted in the future. The bank, on the contrary, binds itself to nothing. Its board of directors may refuse or grant at will the pension of an employee who has punctually paid the dues fixed in the regulations.

We agree that the defendant corporation could validly exercise all these powers if the money devoted to the pension fund were its exclusive property; but we believe that it cannot do so, since the employees contribute a part of their salaries to the said fund.

The case of *McNevin* v. *Solvay Process Co.*, 32 App. Div. 610, affirmed by the New York Court of Appeals, deals with a fund established by the defendant for the benefit of its employees, without any deduction whatever being made from their salaries. The fund was voluntarily created by the defendant with money derived from a part of the earnings of its shareholders, who, through the corporation, kindly gave up those earnings for the benefit of said employees. Justice Follet, speaking for the court in that case, said that a person or corporation proposing to give a sum for the benefit of another person or number of persons, can establish the conditions of its duration and the circumstances under which the right is to become vested and absolute. It is clear that these conditions may be imposed where one's own funds are involved. The case is very different where dues are paid in order that one may be entitled to the pension. No one will doubt that when employees contribute to a pension fund created for their benefit, a contractual relation arises and the existence of a vested right becomes manifest. It is a peculiarity of the instant case that the employees accept that there is no vested right or legal bond whatever, either express

or implied, the granting of pensions being left to the discretion of the board of directors, and for such time as it may deem proper. A transaction like this, where the party bound to grant a pension adopts regulations by virtue of which no rights are conferred and no legal relations are created in favor of the employee, is subject, in our judgment, to a vice which invalidates it. The fund is created for the sole purpose of granting pensions. It is for this purpose that the employee contributes. Nevertheless, the regulations do not recognize the employee's right to demand that the purpose which determined the creation of the fund be carried out. Thus no enforceable right in favor of the employees is recognized, while the board of directors reserves to itself the power to act at will in regard to the granting of pensions.

Here, not only is the performance of the obligation clearly left to the will (*arbitrio*) of said board of directors, but it is expressly declared that there is no legal bond to protect the rights of the employee. " 'Will (*arbitrio*)' " according to Scaevola, "means power, option, determination, and even caprice; 'validity' means firmness, subsistence; and 'fulfillment' means performance, reality; and such elements can be considered in this new formula: 'The effectiveness of a contract cannot remain at the mercy or subject to the mere whim (*voluntad*) of one of the parties.' "

Scaevola comments on section 1256 of the Civil Code, equivalent to section 1223 of our Code, comparing it with the provisions of the French Code which, although not identical, are quite similar to said section. The Code Napoleon, in its sections 1170 and 1174, says that a potestative condition is that which makes the execution of a contract depend on an event which is in the power of one of the contracting parties to bring about or to hinder, and that every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself. The French commentators Dalloz and Laurent maintain that that which is potestative is circumscribed to the debtor, the obligee, the

invalidation of obligations not being applicable in so far as the creditor is concerned. In treating of this question the commentator Scaevola says:

"In examining the Spanish Code, it is observed that in section 1115 it speaks unipersonally, only of the debtor, while in section 1256 it speaks in bipersonal terms, referring to the will *of one* of the contracting parties—that is, of either of them without distinction, which seems to imply that it refers alike to the creditor or to the debtor.

"There is no conflict between the two provisions; it happens that section 1256 is generic, much broader than section 1115, so broad, as we believe we have already said, that the latter section is virtually included in the former. Now, then, in some contracts there is one sole debtor; better said, only one of the parties is bound; while in others both parties may be bound, and in this case the will refers to either of them. For example: a sale, where the vendor is bound to deliver the thing and the vendee to deliver the price; for which reason the fixing of the price cannot be left to the will of either of them, as provided by section 1449, which is a faithful derivative or application of section 1256. The vendor and the vendee are reciprocally creditor and debtor, and, consequently, it would not be fair to leave the effectiveness of the contract to the will of either of them. It might be argued that if the price were left to the determination of the vendor, he would only occupy the position of a creditor with respect thereto; but the fact should not be overlooked that he never loses his character as a debtor, since the price is for the delivery of the thing, and represents neither more nor less the concretion of the economic value of the latter, its equivalent; the two parties thus having mixed the character from which they cannot be detached and which makes them always confront each other as debtors.

"Something similar occurs in the leasing of services. When I contract with a person for the use of his services, whatever these may be, I am the creditor for the rendering of such services and, at the same time, debtor for the price, therefor, and vice-versa, he is debtor and creditor in regard to me: creditor for the price and debtor for his mental or manual labor. By virtue of this merger of personalities, the determination of the price or of any other essential element of the contract cannot be left to the will of either of the interested persons, because at every moment each one appears in the rôle of debtor.

"The case of a loan is very different. In it, there is a creditor and a debtor, without any merger; both capacities are perfectly delineated, and section 1256 is applicable only to the debtor. What does it matter if a lender says, 'I will collect the amount delivered if I wish'? He can always do it at will—collect or not collect. Nothing or no one, in law, imposes upon him, or requires, its collection; if he deems it advisable, he demands payment; if not, he does not do so. A very different thing happens in regard to the borrower: the delivery of the amount or loan unavoidably and necessarily entails the obligation to return it; if in the contract it is provided 'I will return it if I wish,' there is, properly, no obligation in the genuinely contractual sense.

"The same would happen if in the case of a consignative *censo* in which it were stipulated that the person paying the annuity (*censatario*) 'could pay the pension or not, at will.' The annuitant could claim the pension or not, without need of its being stipulated; on the other hand, the *censo* would be essentially altered leaving the payment of the amount dependant on the will of the person paying the annuity." Scaevola, *Comentarios al Código Civil*, volume 20, page 520.

In commenting on the same section, Manresa (4th ed., vol. 8, p. 556) says:

"In our opinion, there are two just grounds for the definite prohibition contained in the section under discussion. First, the obligatory force of the contract; and second, the essential equality of the contracting parties which prevents one of them from being bound by the agreement and the other free from it, in which case, strictly speaking, there would be only one expressed will, one person bound, and real consent would be lacking. . . ."

We believe that the present is one of the cases coming under section 1223 of the Civil Code. The board of directors is the one called upon to grant the pensions, and a clause that reserves to it the right to dispose of them at its own will and expressly states the nonexistence of any legal bond cannot be valid. The unreasonableness of this clause is self-evident when one considers that the rights of the employees remain uncertain, even though the right to a pension may have accrued to them by reason of their having paid their dues during the time required by the regulations and having

fulfilled each and every one of the requisites agreed upon. It is to avoid such cases that the Civil Code provides, in its section 1223, that the validity and fulfillment of contracts cannot be left to the will of one of the contracting parties.

The judgment appealed from must be affirmed.

Mr. Justice Wolf dissented.