HENRY F. GEARNS, Plaintiff, *v.* THE COMMERCIAL CABLE COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, February 4, 1942.

*Haggerty, Myles & Wormser* [*Frank Delaney* of counsel], for the plaintiff.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Theodore Kiendl* and *Lawrence E. Walsh* of counsel], for the defendant.

LYMAN, J. Plaintiff was employed by defendant for forty-four years during the period commencing February, 1888, and ending May 31, 1932. In 1905 defendant adopted a pension plan providing for certain sick and retirement benefits for its employees. Plaintiff was retired under this plan in May of 1932 and has, since that time, been paid $98.64 per month up until May of 1941, when the company refused to make further payments.

This action was brought to recover the monthly payment for May and resulted in a verdict by a jury for the defendant. Before the submission to the jury, defendant moved to dismiss the complaint

and for a directed verdict. After the verdict, plaintiff moved to set it aside. Decision was reserved on these motions. The question before the court is whether on the uncontradicted testimony plaintiff is entitled to recover. The determination of this question rests primarily on the interpretation of the respective rights of the parties under the pension plan, which construction, in the absence of any ambiguity, is for the court to decide.

The company recognized that plaintiff had a vested right, under the plan, which could not be abrogated without his consent. Paragraph " 19 " of the plan provides: " The Company may, at any time, determine or from time to time alter this plan, but any such determination or alteration, if made without the consent of an employee entitled to benefits thereunder, shall not affect or prejudice the rights of such employee under this plan."

Even in the absence of such a provision, it is doubtful if defendant arbitrarily could have refused payment as the plan was not merely a benefaction but a contract supported by plaintiff's consideration of continued services under the plan and his acceptance of other obligations under it. (*McLemore* v. *Western Union Telegraph Co.*, 88 Ore. 228; 171 P. 390; *Western Union Telegraph Co.* v. *Hughes*, 228 Fed. 885; *McNevin* v. *Solvay Process Co.*, 32 App. Div. 610; *Schofield* v. *Zion's Co-op. Mercantile Institution*, 85 Utah, 281; 39 P. [2d] 342.) Assuming then that plaintiff's rights could not be abrogated, the more difficult question remains as to whether his rights to a pension were absolute.

Paragraph " 17 " of the plan provides: " No pension or gratuity shall be paid except out of the profits of the company and no pension or gratuity or claim thereto shall be a charge upon or against or payable out of any of the capital assets of the company."

Defendant offered evidence to show that it earned no profits during the years of 1940 and 1941 but that in fact there was a deficit for those years of over $17,000,000. Plaintiff challenged the accuracy of this statement, contending that the deficit was largely a matter of bookkeeping and was the result of carrying on the liability side of the ledger over $19,000,000 in reserves for depreciation and over $1,500,000 in reserves for pension. There was no evidence that the reserves so set up were not in accordance with good accounting practice and the ultimate fact as to whether or not there were profits for those years was resolved by the jury in defendant's favor.

One more question remains, and that is whether the fund set up in the books of the defendant as a reserve fund for pensions was a trust fund in which plaintiff had a vested interest which would entitle him to recover irrespective of whether there were profits or not.

The pension reserve fund was set up in the books of the company in 1906, one year after the adoption of the plan. It represented the proceeds of a balance transferred from the endowment fund, the fund which preceded the pension plan of 1905. This endowment fund had been built up as a result of commissions on endowment insurance policies which defendant received from the insurance companies, and of fines levied on the employees. The pension fund was later increased by the company by the transfer, on its books, of funds from its surplus account to the pension reserve fund. The amounts so transferred from the endowment fund and the surplus account remain unchanged on the account books and financial reports as pension reserves and total in excess of $1,500,000. This fund was not actually segregated or set aside from the general funds of the company but was carried separately in the books of the company.

Under some circumstances an equitable lien or a constructive trust may be impressed where funds are commingled with general assets. In such cases, however, there must be conscious wrongdoing. (*Continental Casualty Co.* v. *Powell*, 83 F. [2d] 652.) In the absence of wrongdoing, no trust can be impressed unless there has been an actual segregation of the fund. (*Mc Kee* v. *Paradise*, 299 U. S. 119; *Leo* v. *Pearce Stores Co.*, 54 F. [2d] 92; *Continental Casualty Co.* v. *Powell, supra;* 3 Scott on Trusts § 521.4.) In the cited cases recovery was denied employees who sought to impress constructive trusts on funds of the bankrupt employer retained from employees' wages for a pension fund on the ground that there had been no segregation.

Another consideration in determining whether a trust was created is the intention of the parties. (1 Scott on Trusts § 12.2.) There is no evidence to justify an inference that the parties intended that a trust be created, but to the contrary. Paragraph "17" of the plan indicated an intention to create a debtor-creditor relationship.

If there were any basis in law or fact for disturbing the verdict of the jury, the court would be inclined to set it aside because of the apparent hardship to plaintiff. Even if the court were to permit such a consideration to influence its decision, the fact is that the hardship is not as great as it might seem from the recital of facts, because another pension plan has been submitted to plaintiff and the other employees whereby they will receive benefits whether or not the company makes profits.

For the foregoing reasons plaintiff's motion to set aside the verdict and for a new trial is denied. Defendant's motions to dismiss the complaint and for a directed verdict are denied.