Edward J. Greenfield, J.
Petitioners, individually and as trustees, seek to stay arbitration demanded by respondent in connection with disputes arising out of an employment agreement, a profit-sharing trust, and a pension plan.
Respondent’s employment agreement of January 1, 1972 provided for arbitration of ‘ ‘ any controversy or claim arising out of or relating to this arrangement, or the breach thereof.” Respondent’s employment was terminated by agreement on July 7, 1972. That termination agreement not only effectively brought the employment contract to an end, but contained an explicit release of the employer from all obligations, except as stated therein. The termination agreement referred to both the profit-sharing trust agreement and to the pension trust. It provided that sums due under the profit-sharing trust would be paid in installments “subject however to the forfeiture provision of Par. 16 of said agreement which governs competitive employment as therein provided.” It further provided “ payment to you from the Lebhar-Friedman, Inc. Pension Trust is subject to the terms of that trust.”
Respondent thereafter took up employment with another firm. On October 12, 1972, the trustees of the profit-sharing trust notified him that because he was engaged in a business in competition with Lebhar-Friedman, Inc. his interest in the profit-sharing trust fund was to ¡be forfeited. On January 3, 1973, respondent ¡was notified that under the terms of the pension plan he was required to desist from competitive employment within 20 days or forfeit his right thereunder. On February 2, 1973, he was notified that because of his failure to desist from competition he had forfeited all of his right under the pension plan except his right to accumulated contributions.
Respondent’s demand for arbitration is premised upon the arbitration olausés contained in three separate agreements — his employment agreement, a profit-sharing trust agreement, *136 and the pension plan. (Since the employment agreement was terminated by mutual consent and the employer was released from all obligation except under the profit-sharing trust agreement and the pension plan, no independent right of arbitration can .be derived from the employment agreement. All the possible disputes and controversies relating to employment have come to an end. What respondent seeks is vindication, not of his employment conditions, but of his post-employment rights. While his rights to shares in profit sharing and the pension fund accrued during the course of his employment, the forfeiture of those rights arising from charges that he was in competitive employment occurred subsequent to the termination of his employment contract. Any rights respondent may have must be determined solely by the explicit terms of the profit-sharing trust agreement and the pension plan respectively.
Promt-Sharing Trust Agreement : This agreement for the employees of Lebhar-Friedman, Inc. is embodied in a 44-page printed document dated January 1, 1969. The agreement is between Lebhar-Friedman, Inc. and the trustees, and its genesis is traced back to the profit-sharing agreement of 1943. The profit-sharing trust is funded solely by contributions made out of the employer’s net profit, in an amount within its discretion, to the trustees. The employer under the trust agreement assumes no contractual obligation to make any contribution whatever for any particular year and is permitted within its discretion to discontinue making any further contributions. Detailed provisions are made for the reduction or forfeiture of interests in the profit-sharing fund for employees, depending upon the circumstances under which employment is terminated. If an employee is discharged because. of conduct detrimental to the employer’s business, :his entire interest in the profit-sharing fund is forfeited. Even after the connection with Lebhar-Friedman, Inc. is severed, paragraph 16 of the profit-sharing trust agreement provides:
“ If any beneficiary at any time while he is entitled to (a) any payment from the Trust Fund, or (b) to any interest in the Trust Fund, and whether he shall be then in the employ of the Employer or not, shall engage or be employed in any occupation dr business which is in competition with the Employer, the Trustees shall, .upon request in writing by the Employer, cause the entire interest of such beneficiary in the Trust Fund to be forfeited, and upon such forfeiture, the beneficiary shall be deprived thereof and shall have no. right thereto, The determination of the Employer that such beneficiary is *137 engaged or employed in any occupation or business which is in competition with the Employer shall be prima facie evidence that such beneficiary is so engaged or employed and shall be conclusively binding upon such beneficiary unless he shall, within 20 days after he shall be notified in ¡writing of the forfeiture of his interest in the Trust Fund, demand, in writing, that the controversy be arbitrated in the manner provided for arbitration of a dispute under the terms of the Trust Agreement.”
The employment termination agreement of July 7, 1972 had warned respondent that the amounts with which he had been credited under the profit-sharing trust agreement were subject to forfeiture in the event of competitive employment. On August 12, 1972, the trustees of the profit-sharing trust notified respondent that Lebhar-Friedman, Inc. had made the determination that he was engaged in competition with it and that his interest in the profit-sharing trust fund was forfeited. No reference was made in that letter to respondent’s right to demand arbitration of that determination within 20 days, although he was invited to inspect the terms of the agreement on file with the trustees.
With that period, on October 20,1972, respondent’s attorneys wrote the trustees, disputing the determination that he was in competition, and rejected the claim of forfeiture. The attorneys wrote, “We have given attention to the unusual provisions of the Trust Agreement concerning arbitration, and the likelihood that such provisions are unenforceable under the circumstances.” They went on to say “ Should a court hold, which we doubt, that the arbitration provisions of the Trust Agreement are enforceable and that the dispute between Mr. Romaine and the Trust is arbitrable, this letter shall serve as the requisite notice under paragraph 16 of the Trust Agreement.”
This rather equivocal declaration, while not exactly a demand for arbitration, did attempt to reserve respondent’s right to arbitrate should a court so direct.
On October 24, 1972, the trustees’ attorneys wrote, adverting to the desire of respondent to pursue court action and to reserve the right to arbitration at the same time. They warned him: “ The provisions of the Trust Agreement dealing with arbitration and the time for demand therefor are binding and enforceable. If Mr. Romaine does not avail himself thereof, he does so at his own risk ”.
On October 31, 1972, respondent’s attorneys shot back that “ Tour attorneys may not assume that our letter of October 20 was intended to be an election to forego arbitration. Lest there *138 by [sic] any doubt as to whether our letter was intended as a demand for arbitration, it was so meant. We thereby confirm that Mir. Romaine demands, that, if appropriate, the controversy between him and the Trust concerning his right to receive benefits be submitted to the appropriate tribimal for disposition.”
Thus, while the intention of the respondent to seek arbitration of the controversy as to the forfeiture of his profit sharing rights was made manifest within the 20-day period from the notice of forfeiture, petitioners contend that there was no adequate and timely demand. Respondent’s formal demand for arbitration in the requisite form for the American Arbitration Association was not served until February 21, 1973. The trustees contend that the demands for arbitration contained in the letters of October 20 and October 24 failed to Comply with section 7 of the commercial arbitration rules of the American Arbitration Association, which would be the manner provided for arbitration under the terms of the trust agreement.
The intention to demand arbitration having been clearly expressed by the respondent within the 20-day period, so that it was clear that there was no intention.by him to waive his rights to contest the forfeiture, there is no basis for this court to interdict the arbitration from going forward. The sufficiency of the demand for arbitration and the scope of the controversy described therein are reserved for determination by the arbitrators. (Matter of Long Is. Lbr. Co. [Martin], 15 N Y 2d 380, 384; Matter of Dan Curtis Prods. [Writers Guild of Amer.], 35 A D 2d 800, 801; Matter of Tuttman [Kattan, Talamas Export Corp.], 274 App. Div. 395; Matter of Vincent J. Smith, Inc. [Truck Drivers and Helpers Local Union No. 649], 23 AD 2d 944.)
pension plan: The. Lebhar-Friedman, Inc, pension plan, a 29-page agreement dated October 3, 1957, was initially a noncontributory plan setting up a fund for retirement income benefits. Again, there is the recital that the contributions made by the company were voluntary and that the company was under no legal obligation to make them. On September 23,1965, the pension plan agreement was amended to make it a contributory plan. Paragraph 18 of the amendment provides: “ If any Participant, whether he shall then be in the employ of the Company or not, shall engage or be employed in any occupation or business which is in competition with the Company and if he shall continue in such competition for 20 days after being requested by the Company in writing to stop, then such Partici *139 pant shall forfeit all of his rights under the Plan other than the right to receive his Accumulated Contributions.”
Such a notice to desist was sent to respondent on January, 1973. On February 2, 1973, respondent was notified by the retirement committee that because of his continuation in competition he had forfeited all of his rights under the pension plan, except his right to accumulated contributions. The only formal demand for arbitration relating specifically to the pension plan was in the demand for arbitration dated February 16, 1973. Petitioners, seeking to stay the arbitration with respect to the pension plan, urged that arbitration is not available to respondent as a remedy under the terms of that plan.
The pension trust agreement provides in paragraph 11 thereof:
“eleventh: It is the intent and purpose of this Agreement that all matters and questions arising out of or pursuant to the terms hereof or out of or in connection with any transactions of the Trust or actions on the part of the Trustees shall be conclusively settled and determined by the Trustees acting jointly with the Company or the Committee and that their determination with respect thereto shall be binding upon all participants, their beneficiaries and estates.
“If any controversy or dispute shall arise and despite the foregoing provisions and the intent and purpose of this Agreement as expressed herein, a court having jurisdiction, should hold that a determination as aforesaid is not conclusively binding, then and in any of those events, it is the intent and purpose of this Agreement that such determination and the controversy or dispute out of which it arose shall be arbitrated and shall not be the subject of any lawsuit in a court equity or a court of law. Any such controversy or dispute which may be the subject of arbitration as aforesaid shall be arbitrated in accordance with the rules then obtaining of the American Arbitration Association.”
-The provisions of the pension plan are thus seen to be substantially different from those of the profit-sharing trust agreement. The profit-sharing trust agreement provides that the determination as to the fact of competition shall be prima facie evidence, but the right of the employee to demand arbitration of the controversy within 20 days is explicitly reserved. Under the pension plan, the initial determination as to the fact of competition and the consequence of forfeiture is a question which it is provided “shall be conclusively settled and determined by the Trustees acting jointly with the Company or the Committee.” *140 And it is further provided that “ their determination with respect thereto shall be binding, upon all particpants, their beneficiaries and estates.” Unlike the profit-sharing trust, the provision for arbitration is a contingent and secondary line of defense. The right to arbitration comes into play only in fhe event that a court holds that the determination of the trustees and the company is not conclusively binding. That is the issue squarely presented for this court on. the application to stay arbitration.
It has long been the law with respect to pension plans and profit-sharing plans which are not. the outgrowth of collective bargaining agreement that the setting up of such a plan is entirely voluntary on the part of the employer and that the benefits conferred thereby are gratuities which the employer has the right to refuse or discontinue as circumstances warrant. (See McNevin v. Solvay Process Co., 32 App. Div. 610, affd. 167 N. Y. 530.) In that case, a pension fund made available by an employer was held to be in essence a gift in which an employee would have no vested rights, with the pension fund committee being authorized to decide all questions concerning employee rights without appeal. Such plans were initially conceived of as inchoate promises to make payments to insure the industry and loyalty of employees. (Burgess v. First Nat. Bank, 219 App. Div. 361; Dolge v. Dolge, 70 App. Div. 517; MacCabe v. Consolidated Edison Co., 30 N. Y. S. 2d 445.) Our courts continue to recognize the right of the employer to make unilateral determinations with respect to payment of a pension under a retirement plan when its power to do so is expressly reserved in the plan. (Connors v. Howard Stores Corp., 23 A D 2d 686.) The result would be different where the pension plan was the result of negotiation between employer and employees and where the employer did not retain the right to make unilateral changes. (Gearns v. Commercial Cable Co., 177 Misc. 1047, affd. 266 App. Div. 315, affd. 293 N.Y. 105, rearg. den. 293 N. Y. 755.)
Upon the theory that the noncontributory pension plan was the bestowal of a gratuity, like the granting of a year-end bonus, private voluntary pension plans usually provide that the decision of company management or of the administrators of the plan or both jointly shall be binding and conclusive, and decisions by the employer or trust administrators pursuant to such provisions or plan have been held to be fully enforceable. (McNevin v. Solvay Process Co., 32 App. Div. 610, affd. 167 N. Y. 530, supra; Burgess v. First Nat. Bank, 219 App. Div. 361, supra; *141 Korb v. Brooklyn Edison Co., 258 App. Div. 799, rehearing den. 258 App. Div. 887.)
‘‘-'"iSince one of the purposes of granting to employees rights to pensions or profit sharing is to insure the loyalty and fidelity of the employees, it is usual that pension plans provide that the right to a pension may he disallowed when there has been a severance of the employee for good cause shown, particularly for acts of disloyalty or dishonesty.
Even under private pension plans where employees were required to make a regular contribution of their own, some cases have held that if the conditions or terms of severance of employment were of certain types spelled out in the pension plan, even the employee’s contribution might be deemed forfeited. (Doyle v. French Tel. Cable Co., 244 App. Div. 586; Gould v. United Traction Co., 282 App. Div. 812.)
In actuality there are comparatively few cases dealing with the validity, construction and effect of forfeiture of pension because of competition. (See Ann. 18 ALR 3d 1246 et seq. See O’Madigan v. General Motors Corp., 202 F. Supp. 190, affd. 312 F. 2d 250.) While some cases hold that an unrestricted prohibition against competition is unenforceable (e.g., Muggill v. Reuben H. Donnelley Corp., 62 Cal. 2d 239; Mackie v. State Farm Mutual Auto Insurance Co., 13 Mich. App. 556), usually the holding of such cases is based upon a State statute voiding such restraints. Where there is no such statute, it is usually held that the clause providing for forfeiture of pension in the event of subsequent competition by the employee is a reasonable restraint, since the employee has the choice of preserving his right to pension benefits or competing with his former employer by waiving his right to pension benefits. (Van Pelt v. Berefco, Inc., 60 Ill. App. 2d 415.) The New York courts have likewise held that an employee may forfeit his right to profit sharing or retirement benefits by working for a competitor. (Matter of Kumm, 36 Misc 2d 816.) In Kristt v. Whelan (4 A D 2d 195, affd. 5 N Y 2d 807) it"was held, rejecting the argument that the noncompetition clause was an unreasonable restriction, that an employee’s interest in a pension fund was subject to forfeiture where the trustees found competition existed. See, also, Jacobus v. Massachusetts Mut. Life Ins. Co. (91 F. Supp. 674) and Kidd v. Oakes (39 Misc 2d 645) where the determination of forfeiture for competition was again upheld even to the extent of compelling a retired employee to disgorge amounts previously paid.
*142 Since the pension plan benefit, at least to the extent of the employer’s contribution, is deemed a matter within the control and discretion of the employer, and the noncompetition clause is valid and enforceable, it would follow that what is bestowed by the employer may be withdrawn by the employer. Thus, there is nothing offensive or contrary to public policy in having the employer alone, the trustee alone, or the trustees and employer jointly, make the decision as to whether a given employee, because of claimed infidelity has to forfeit the sums which the employer would otherwise have conferred upon him. Under those circumstances, it makes little difference if the trustees are truly independent of the company or not, for the employer himself could properly reserve the right to make a unilateral determination. So long as the trustees have not acted arbitrarily or in bad faith, there is no reason why their determination, as set forth in the agreement,- should not be conclusive and binding.
The trustees in their letter of February 2, 1973 have already made the determination of forfeiture. Since that determination is, absent a showing of arbitrariness or fraud, conclusive and binding, the arbitration provisions of the' pension plan do not come into play. There is nothing left thereunder for the arbitrators to arbitrate.
Accordingly, the motion to stay arbitration is denied with respect to the profit-sharing trust agreement and granted with respect to the employment agreement and pension plan.